# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SHALETT L. DOXIE,                          :
                                           :
       **Plaintiff,**                  :       **CIVIL ACTION FILE NO.**
                                           :       **1:13-cv-02611-WSD-AJB**
       **v.**                          :
                                           :
**CHIPOTLE MEXICAN GRILL, INC.,**          :
                                           :
       **Defendant.**                  :

## UNITED STATES MAGISTRATE JUDGE'S
## <u>FINAL REPORT AND RECOMMENDATION</u>

In this action, Plaintiff Shalett L. Doxie ("Doxie" or "Plaintiff") raises claims against Defendant Chipotle Mexican Grill, Inc., ("Chipotle" or "Defendant") for race and sex discrimination pursuant to Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), and race discrimination pursuant to 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("§ 1981"). Defendant has filed a motion for summary judgment. [Doc. 27]. For the reasons set forth herein, the undersigned **RECOMMENDS** to the District Judge that he **GRANT** the motion.

## I.    Background

As required when considering a motion for summary judgment, the Court has viewed the evidence and factual inferences in the light most favorable to Plaintiff, the nonmoving party.  *See United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).  To the extent that material facts are in dispute, the Court has resolved the disputes in Plaintiff's favor.  *See Vaughan v. Cox*, 343 F.3d 1323, 1326 n.1 (11th Cir. 2003).  The facts of the case, for the purpose of adjudicating Defendant's motion for summary judgment, are therefore as follows.[1]

Chipotle hired Plaintiff in November 2003 as a Supervisor. (Def. SOF ¶ 1; Pl. Resp. ¶ 1[2]).  On July 25, 2005, Plaintiff was promoted from Supervisor to the position now known as Apprentice.[3]  (*See* Def. SOF. ¶¶ 4, 5;

---

[1]    The facts recited in this section are intended to establish the context of the case.  Additional facts will also be recited in the discussion section in the text.

[2]    Paragraph numbers preceded by "Def. SOF" refer to Defendant's Statement of Undisputed Material Facts, [Doc. 27-2], filed in support of its motion for summary judgment.  Paragraph numbers preceded by "Pl. Resp." refer to Plaintiff's responses to the statements of material fact, [Doc. 31-1].  Paragraph numbers preceded by "Pl. SOF" refer to Plaintiff's Statement of Undisputed Facts, [Doc. 31-2], and "Def. Resp." refers to Defendant's responses to Plaintiff's SOF, [Doc. 32-1].

[3]    From July 25, 2005 until 2006, this position was called Assistant Manager. The job duties were the same.  *See id.*

2

Pl. Resp. ¶¶ 4, 5).   Chipotle's employee hierarchy is, in ascending order of responsibility, as follows: Crew, Kitchen Manager, Service Manager, Apprentice, General Manager, Restaurateur.  (Def. SOF. ¶ 5; Pl. Resp. ¶ 5).  Chipotle restaurants that averaged more than $4500 in sales each day were typically staffed by a General Manager and an Apprentice, while restaurants that averaged less than $4500 were not required to have both a General Manager and an Apprentice and so had either a General Manager working without an Apprentice or an Apprentice working without a General Manager.   (Def. SOF. ¶¶ 10, 11; Deposition of Leslie Ratelle, [Doc. 27-6] ("Ratelle Dep."), at 18; Deposition of Devin DeHaven, [Doc. 27-4] ("DeHaven Dep."), at 51, 140-42; Deposition of Shalett L. Doxie, [Doc. 27-5] ("Doxie Dep."), at 212-13)).[4]

---

[4]       Def. SOF ¶ 10 also asserts that a restaurant with a Restaurateur responsible for more than one restaurant would need an Apprentice to watch the store when the Restauranteur was absent, regardless of sales, (citing to Ratelle Dep. at 178-79). Plaintiff denies ¶ 10 as a whole, arguing that the statement is not supported by the citation.  The Court agrees that the second assertion is not supported by the citation, however, the Court disregards this fact as immaterial.  The first assertion as stated in the body of this R&R is supported by the citations.  Plaintiff additionally argues that the Johns Creek and East Cobb restaurants had both a General Manager and Apprentice while their sales were less than $4500 each day.  (Pl. Resp. ¶ 10 (citing [Doc. 31-33 at 2])).  However, this statement does not contradict the above assertion, which was supported by Plaintiff's testimony that low-volume stores were not *required* to have both a General Manager and an Apprentice.

        Plaintiff also objects to Def. SOF ¶ 11 for several reasons: (1) Defendant failed to disclose Smiley as a witness as required by Federal Rule of Civil Procedure 26 and

3

Above the position of restaurateur, Chipotle employs Apprentice Team Leaders, Team Leaders and Area Managers, who are responsible for the operations of multiple restaurants within a geographic region. (Def. SOF ¶ 14; Pl. Resp. ¶ 14). These persons, in turn, report to a Team Director. (*Id.*).

In June 2008, Doxie was transferred to Chipotle's Mall of Georgia restaurant as an Apprentice. (Def. SOF ¶ 21; Doxie Dep. at 63-64). At the time Plaintiff was

_____

N.D. Ga. R. 26; (2) the exhibits were produced on September 4, 2014, after the close of discovery; (3) the statement is unsupported by the citation; and (4) Defendant has failed to lay a proper foundation with testimony supporting that Exhibit G (2010 Profit & Loss Statement for Mall of Georgia, [Doc. 27-9]) supports the statement. The objection that Smiley was not disclosed is **OVERRULED**, since Defendant did not cite to any testimony from Smiley in this statement of fact. Plaintiff's objection that the document was disclosed after discovery ended is **SUSTAINED**. Discovery ended in this matter on July 31, 2014 and the Profit & Loss Statements for Mall of Georgia were produced on September 4, 2014. [*See* Doc. 31-32]. (As a result, the Court need not address whether Defendant laid a proper foundation with testimony for this exhibit.) Therefore, all documents produced by Defendant after the close of discovery will be disregarded by this Court.

On the other hand, to the extent Plaintiff objects to the Leslie Ratelle Declaration, [Doc. 27-3], ("Ratelle Dec.") as evidence produced after the close of discovery, this objection is **OVERRULED**. Plaintiff does not dispute that Ratelle was disclosed as a witness and she even had the opportunity to depose her. Plaintiff does not cite to any rule, statute, or case law that requires declarations from disclosed witnesses that were previously deposed to be produced prior to the close of discovery. Further, while the Court would be inclined to sustain Plaintiff's objection to the Ratelle declaration on the basis that the statement is unsupported by the citation, the citation is supported by Plaintiff's own testimony and thus the objection that this statement is not supported by the citation is **OVERRULED**.

4

transferred, Nipul Patel was the Restaurateur of the Mall of Georgia restaurant and there was no General Manager. (*See* Def. SOF ¶¶ 22, 28; Pl. Resp. ¶¶ 22, 28). Patel was responsible only for the Mall of Georgia and Plaintiff worked directly with Patel for approximately one year. (Def. SOF ¶ 23; Pl. Resp. ¶ 23). During that time, Patel tried to develop Plaintiff into a General Manager. *Id.* In early 2010, Patel became responsible for multiple Chipotle Restaurants, leaving Plaintiff as an Apprentice acting as a General Manager. (*See* Def. SOF ¶¶ 27, 28; Pl. SOF ¶¶ 27, 28; Pl. SOF ¶ 2; Def. Resp. ¶ 2).

In 2010, Leslie Ratelle, a white female, was a Team Director responsible for approximately 50 restaurants, including the Mall of Georgia restaurant, and one of Plaintiff's supervisors. (Def. SOF. ¶¶ 15, 18; Pl. Resp. ¶¶ 15, 18; Pl. SOF ¶ 3; Def. Resp. ¶ 3). From January 2010 until September 2010, Melanie Burrows, a white female, was the Area Manager responsible for multiple restaurants and was Plaintiff's direct supervisor. (Pl. SOF ¶ 4; Def. Resp. ¶ 4; Def. SOF ¶ 29; Pl. Resp. ¶ 29).

In February 2010, Plaintiff reported to Human Resources that one of her subordinates called a customer a "Fucking Nigger" in Spanish. (Def. SOF ¶ 101; Pl. Resp. ¶ 101). After discussion with HR and with HR's approval, Plaintiff terminated that employee for her racist comment. *Id.* Plaintiff also reported other

5

racial tensions to HR between Plaintiff and her subordinates, who were Hispanic. (Def. SOF ¶ 102; Pl. Resp. ¶ 102). Plaintiff reported these issues to Ratelle, who told Plaintiff to hold a meeting with her crew to discuss these issues and make sure they were not looking at race. *Id.* Plaintiff held this meeting and afterwards there was still tension between her and her crew members. (*Id.*; Def. SOF ¶ 103; Pl. Resp. ¶ 103). Plaintiff spoke to Patel about the continued tensions, and Patel told Plaintiff not to report them to Human Resources because it would make Ratelle look bad. (Def. SOF ¶ 104; Pl. Resp. ¶ 104).

On March 2, 2010, it was noted in Plaintiff's Development Journal that Plaintiff needed to check daily cash receipts ("DCRs") more thoroughly and that Plaintiff needed to have a better eye for detail with food quality. (Def. SOF ¶ 38; Doc. 27-17).[5]

---

[5]    Plaintiff objects to this fact on the basis that Defendant, in part, relied on Smiley's declaration, [Doc. 27-8], who was not disclosed as a witness as required by Fed. R. Civ. P. 26 and N.D. Ga. R. 26. Plaintiff further objects that the exhibits cited, [Doc. 27-17], were produced after the discovery deadline. Therefore, Plaintiff argues that the declaration and exhibits should be excluded. Moreover, Plaintiff argues that the statement is not material as DeHaven did not cite to this document as a basis for Plaintiff's termination and did not review Plaintiff's personnel file. Further, Plaintiff contends that the statement mischaracterizes the statements contained in the document.

The Court **SUSTAINS** Plaintiff's objection on the use of the Smiley declaration as this person was not disclosed as a witness as required by the federal and local rules. [*See* Doc. 31-29]. However, the Court **OVERRULES** Plaintiff's objection that the cited exhibits, [Doc. 27-17], be excluded, because Plaintiff has made no showing that

6

On May 20, 2010, another entry in Plaintiff's Development Journal showed that Plaintiff set goals for herself to make improvements.  [Doc. 27-19 at 1].[6]  On June 7, 2010, Burrows submitted a note in Plaintiff's Development Journal as a follow-up to the May 20 entry.  (Def. SOF ¶ 44)[7]; [Doc. 27-19 at 1-2].  Burrows commented

---

this document was produced after the discovery deadline.  The Court further **OVERRULES** Plaintiff's objections based on materiality and mischaracterization, as this goes to Defendant's argument that Plaintiff had a documented history of poor performance.  The fact that DeHaven did not review Plaintiff's personnel file is immaterial since the evidence shows he received performance reports about Plaintiff from Ratelle and Burrows. *See, e.g.,* (Def. SOF ¶¶ 63, 65; Pl. Resp. ¶¶ 63, 65); *see also infra* nn.9, 10.

[6]      Although the Court need consider only the cited materials, it may also consider other materials in the record.  Fed. R. Civ. P. 56(c)(2).

[7]      Plaintiff objects to this statement on the basis that Defendant failed to disclose these documents and that they have been attested to only by defense counsel, which is not proper authentication under the Fed. R. Evid. 901.  Plaintiff further objects on the grounds of hearsay as there is no testimony laying the foundation explaining the documents.  Plaintiff also states that the statement is not material as DeHaven only supervised Plaintiff for a month, did not cite to the documents as a basis for his decision and did not review Plaintiff's personnel file.

The Court **OVERRULES** Plaintiff's objection on the basis that Defendant failed to disclose the documents since the Development Journal was disclosed.  [Doc. 31-29 at 5].  The Court also **OVERRULES** Plaintiff's foundation and hearsay objections, as Defendant cited to Plaintiff's deposition to lay the foundation of the Development Journal.  The Court further **OVERRULES** Plaintiff's objections based on materiality and mischaracterization, as this goes to Defendant's argument that Plaintiff had a documented history of poor performance.  The fact that DeHaven did not review Plaintiff's personnel file is immaterial since the evidence shows he received

7

that Plaintiff "show[ed] inconsistency in running a great operation and not meeting expectation" and that Burrows wanted Plaintiff "to improve on . . . follow through on getting . . . day to day operation duties complete[d] and on time." [Doc. 27-9 at 1]. Burrows provided examples such as opening the store by 10:45 am, taking the deposits to the bank before 10:00 am, having weekly cash audits and posting her schedule no later than Thursday. [*Id.*].

Chipotle utilizes audits to assess the operations and cash handling of each restaurant; audits are conducted weekly by General Managers; monthly by a Restaurateur, Area Manager, Apprentice Team Leader, or Team Leader; and once a year, a corporate audit is performed by one or more members of Chipotle's corporate Safety Security and Risk Team. (Def. SOF ¶ 41; Pl. Resp. ¶ 41). In these audits, the cash handling score is represented as a number and the operations grade is reflected as a letter grade. (Def. SOF ¶ 42; Pl. Resp. ¶ 42). Most Chipotle restaurants have only one or two cash handling violations per quarter. (*Id.*).

On May 30, 2010, an audit was performed on the Mall of Georgia restaurant in which the restaurant received a "3," meaning that there were three cash handling

_____

performance reports about Plaintiff from Ratelle and Burrows. *See, e.g.,* (Def. SOF ¶¶ 63, 65; Pl. Resp. ¶¶ 63, 65); *see also infra* nn.9, 10.

8

violations, and an Operation Grade of "A." (Def. SOF ¶ 43; Pl. Resp. ¶ 43; Pl. SOF ¶ 66).[8] On June 7, 2010, the Mall of Georgia restaurant received an audit score of "2" and grade of "A." (Def. SOF ¶ 44; Pl. Resp. ¶ 44; Pl. SOF ¶ 67). On July 24, 2010, the Mall of Georgia restaurant received an audit score of "0" and grade of "A." (Pl. SOF ¶ 68; [Doc. 31-21]). On August 28, 2010, the Mall of Georgia restaurant received an audit score of "2" and a "B" grade for operations. (Def. SOF ¶ 61; Pl. Resp. ¶ 61; Pl. SOF ¶ 69). Plaintiff also did not receive a bonus in 2010. (Def. SOF ¶ 49; Doxie Dep. at 181).

In late June 2010, Burrows communicated to Ratelle and Devin DeHaven about Plaintiff's performance issues and expressed a desire to terminate Plaintiff.

---

[8]    Defendant objects to Plaintiff's statements regarding her monthly audit scores as not material, however, Defendant also stated these facts in its Statement of Material Facts. Therefore, Defendant's objection is **OVERRULED**.

9

(Def. SOF ¶¶ 46,[9] 63; Pl. Resp. ¶ 63; Ratelle Dep. at 162; DeHaven Dep. at 61-62, 252-53; Ratelle Dec. ¶ 12; [Doc. 27-24]).

In September 2010, Burrows was terminated for failing to spend the necessary amount of time in the stores developing and mentoring the management team, including Plaintiff. (Def. SOF ¶ 62; Pl. Resp. ¶ 62; Pl. SOF ¶ 5). Devin DeHaven, a white male and Restaurateur, was assigned to mentor and supervise Plaintiff and was responsible for the Mall of Georgia, Johns Creek, East Cobb, and Windward locations. (Def. SOF ¶ 63; Pl. Resp. ¶ 63; Pl. SOF. ¶ 7; Def. Resp. ¶ 7). When DeHaven took over, Ratelle discussed with him Plaintiff's leadership issues, including Plaintiff's not coming into work, failure to schedule herself the requisite number of hours, failure to

---

[9]     Plaintiff objects to this statement on the grounds that Defendant did not disclose these documents before discovery ended, they were attested to by counsel, and contain hearsay. Plaintiff further argues that the statement is not material as DeHaven only supervised Plaintiff for a month, did not cite these documents as a basis for termination, and did not review Plaintiff's personnel file. Plaintiff's objections are **OVERRULED**. Plaintiff does not provide any evidence that the documents were disclosed after discovery ended, and the statements are supported by deposition testimony and declarations. The statement also does not contain hearsay as the statements by Burrows are not made for the truth of the matter, but reflect Ratelle's and DeHaven's perceptions that Plaintiff had performance issues.

10

hold herself accountable and her need to hold both her crew and herself to high standards. (Def. SOF ¶ 65; Pl. Resp. ¶ 65).[10]

On October 4, 2010, a corporate audit was performed on the Mall of Georgia restaurant. (Def. SOF ¶ 66; Pl. Resp. ¶ 66). Plaintiff received an "F" grade on operations and cash handling score of "11." (Def. SOF ¶ 67; Pl. Resp. ¶ 67). Corporate audits also were performed on the Johns Creek and Windward restaurants in October 2010, for which the Johns Creek restaurant received a "D" grade for operations and cash handling score of "3," and the Windward restaurant received a "F" grade for operations and cash handling score of "7." (Pl. SOF ¶¶ 72, 73; [Docs. 31-23, 31-24]).[11] At the time of these corporate audits, the General Manager at the Johns Creek restaurant was Aldo Pereira, a Hispanic male, and the General Manager at the Windward restaurant was Martin Pereira, also a Hispanic male. (Pl. SOF ¶¶ 74-75; DeHaven Dep.

---

[10]     Plaintiff admits that Ratelle made this statement to DeHaven, but denies that the statements were true. However, as this statement is not being considered for the truth of the matter, but rather as to the state of mind of DeHaven as the decision maker, the Court will consider this fact.

[11]     Defendant objects on the ground that the fact is not material. However, part of Plaintiff's theory of the case is that other managers outsider her race and sex were not terminated for a failing audit score. As a result, the Court finds this fact to be material. Therefore, the objection is **OVERRULED**.

11

at 162, 168-69).  Both General Managers previously had been promoted to these positions by DeHaven.  (Pl. SOF ¶¶ 23-24; DeHaven Dep. at 47-48).[12]

After the October 4 audit, Regional Director Bobby Shaw (Ratelle's supervisor) sent an email stating "I think we can move forward with Shallet's termination anytime. Are you feeling that way too?"  (Def. SOF ¶ 73; Pl. Resp. ¶ 73; [Doc. 27-36]). However, DeHaven did not discipline Plaintiff or any other manager for this audit. (Def. SOF ¶ 74; Pl. Resp. ¶ 74; Pl. SOF ¶ 78; DeHaven Dep. at 169-70).

On October 24, 2010, DeHaven sent an email to the managers of his restaurants, including Plaintiff, informing them that he would be doing monthly cash audits of the Mall of Georgia, Windward and East Cobb restaurants that week in anticipation of the return of one of the corporate auditors.  (Def. SOF. ¶ 79; [Doc. 27-41]).[13] On October 26, 2010, LeAnn West, a white female and another Restaurateur, along

---

[12]    Defendant objects to these facts as not material, however, the Court finds these facts to be material as they go to Plaintiff's argument that Defendant primarily promoted Hispanic males or non-African-American females.  Therefore, Defendant's objection is **OVERRULED**.

[13]    Plaintiff denies that this is a material fact, (Pl. Resp. ¶ 79), however, the Court finds this fact to be material.  It demonstrates that Plaintiff was on notice that a financial investigation/examination was going to be conducted.

12

with DeHaven, performed what was purported[14] to be a cash audit of the Mall of Georgia Restaurant.  (*See* Def. SOF ¶¶ 78, 80, 81; DeHaven Dep. at 85; Deposition of LeAnn West, [Doc. 27-20] ("West Dep."), at 118).  In an email to DeHaven from West dated October 30, 2010, West reported findings of fourteen violations in a twenty-six day period.  (Def. SOF. ¶ 80; [Doc. 27-42]).

On October 25, 2010, the day before West and DeHaven conducted this examination, Ratelle and DeHaven transferred and promoted Javier Correa, a Hispanic male, to the General Manager position at the Mall of Georgia restaurant, effective October 29, 2010.  (Pl. SOF ¶ 13; Def. Resp. ¶ 13).  On October 26, 2010, the day of the examination, Plaintiff's termination paperwork was processed with an effective date of October 28, 2010.  (Pl. SOF ¶ 12; Def. Resp. ¶ 12; [Doc. 31-9]).  On October 28, 2010, DeHaven notified Plaintiff that she was terminated.  (Def. SOF ¶ 83; Pl. Resp. ¶ 83).  At the meeting in which Plaintiff was terminated, DeHaven stated that Burrows had failed to support Plaintiff and that "as a woman, she should have stepped up" to mentor Plaintiff.  (Def. SOF ¶ 86; Pl. Resp. ¶ 86).  During this conversation,

---

[14]     As discussed below, Plaintiff disputes that the investigation conducted by West and DeHaven was actually an "audit."

13

DeHaven also questioned Plaintiff about the performance of a black female Service Manager.  (*See* Def. SOF. ¶ 87; Pl. Resp. ¶ 87).

On February 3, 2011, Plaintiff timely filed a charge of discrimination alleging race and sex discrimination with the Equal Employment Opportunity Commission ("EEOC").[15] [Doc. 1-1].  On March 19, 2013, the EEOC issued a finding of reasonable cause as to the race discrimination and determined that there was insufficient evidence to support the allegation of sex discrimination.  [Doc. 1-2].  Plaintiff received a right-to-sue letter on May 12, 2013.  [*See* Doc. 1 ¶ 67].

On August 7, 2013, Plaintiff filed a complaint in this Court alleging race and sex discrimination based on her termination from Chipotle. (Def. SOF ¶ 108; Pl. Resp. ¶ 108).  Following discovery, Defendant filed the pending motion for summary judgment.  [Doc. 27].  Plaintiff responded, [Doc. 31], and  Defendant replied. [Doc. 32].  With briefing complete, the Court now considers the summary judgment motion.

---

[15]    The EEOC assigned the matter Charge No. 410-2011-01772.  [Doc. 1-1].

14

## II.    Summary Judgment Standard

"Summary judgment is proper where 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.' " *Tana v. Dantanna's*, 611 F.3d 767, 772 (11th Cir. 2010) (quoting Fed. R. Civ. P. 56(c)). The movant carries the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986)).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party also may meet its Rule 56 burden by pointing out that there is an absence of evidence to support an element of the case on which the nonmoving party bears the burden of proof. *Celotex*, 477 U.S. at 325.  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

15

AO 72A
(Rev.8/8
2)

The nonmovant is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions, and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252.  "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Id.*  If the record does not blatantly contradict the nonmovant's version of events, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  *See Anderson*, 477 U.S. at 252; *see also EPL Inc. v. USA Fed. Credit Union*, 173 F.3d 1356, 1362 (11th Cir. 1999); *Duke v. Cleland*, 884 F. Supp. 511, 514 (N.D. Ga. 1995).  On the other hand, if the record presents disputed issues of material fact, the Court may not decide them; rather, it must deny the motion and proceed to trial.  *FindWhat Inv. Grp. v.*

16

*FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (citing *Tullius v. Albright*, 240 F.3d 1317, 1320 (11th Cir. 2001)).

### III.   Legal Framework

Plaintiff brings her claim of employment discrimination under Title VII, which makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[16] 42 U.S.C. § 2000e-2(a)(1).  Plaintiff also brings a race discrimination claim pursuant to § 1981, which "prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." *Blow v. Virginia College*, --- Fed. Appx. ----, ----, 2015 WL 4503337, at *2

---

[16]    Title VII also makes it unlawful for an employer to retaliate against an employee for his participation in certain statutorily protected activities:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a); *see also Biniashvili v. Bohne*, 397 Fed. Appx. 597, 598-99 (11th Cir. Sept. 28, 2010).

17

(11th Cir. July 24, 2015) (quoting *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999)).  Discrimination claims brought under Title VII and § 1981 "are subject to the same standards of proof and employ the same analytical framework." *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009).  Thus, for purposes of this R&R, in addressing Plaintiff's Title VII race discrimination claim, the same analysis applies to Plaintiff's § 1981 claim.

To establish a claim under Title VII, an individual may proffer direct or circumstantial evidence of discrimination.  *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006).  A plaintiff may also prove a claim of intentional discrimination through statistical evidence.  *Alvarez v. Royal Atl. Developers*, 610 F.3d 1253, 1264 (11th Cir. 2010) (citation omitted).

Plaintiff does not dispute Defendant's argument that there is no direct evidence of discrimination, nor is there any statistical evidence to support her claim. [*See* Doc. 27-1 at 8-10, 14-15; Doc. 31 at 4].  Rather, Plaintiff argues that her case is predicated on circumstantial evidence.  [Doc. 31 at 4].

When a party relies on circumstantial evidence to prove her case of discrimination, courts employ the familiar burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas*

18

*Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981); and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).   *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005); *see also Lawyer v. Hillcrest Hospice, Inc.*, 300 Fed. Appx. 768, 772 (11th Cir. Nov. 24, 2008) (citing *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998)).

Under the *McDonnell-Douglas* framework, a plaintiff first must establish a *prima facie* case of discrimination.  *See, e.g., Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006).  If the plaintiff establishes a *prima facie* case, she has created an inference of discrimination, and the defendant has the burden of producing a legitimate, non-discriminatory reason for its employment action.  *Id.*  If the defendant meets this light burden, then the inference of discrimination is rebutted, and the inquiry "proceeds to a new level of specificity in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination."  *Id.* (quoting *EEOC v. Joe's Stone Crab, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002)).  To demonstrate pretext, the plaintiff must provide evidence that "reveal(s) 'such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.' "  *Vessels v. Atlanta Ind. Sch. Sys.*, 408 F.3d 763, 771

(11th Cir. 2005) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004)). Despite this burden-shifting framework, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 1999) (quoting *Burdine*, 450 U.S. at 253).

## IV.   *Discussion*

In her complaint, Plaintiff alleges that she was terminated from her position based on her race and sex and complains that similarly situated employees outside her race and sex were not terminated and were treated differently than Plaintiff. [Doc. 1]. Specifically, Plaintiff alleges that she was not provided with the same mentorship and support that Defendant provided to non-African-American male Apprentices, and that Defendant did not employ any African-American or female General Managers under the supervision of Burrows and/or DeHaven. [Doc. 1 ¶¶ 32, 33, 35, 36]. Plaintiff further alleges that she was terminated for performance issues but that other non-African-American male Apprentices and General Managers with similar performance issues were not terminated. [Doc. 1 ¶¶ 37, 41, 42, 43, 44]. Finally, Plaintiff alleges that Defendant engaged in a practice and pattern of hiring Hispanic employees for management positions, Plaintiff was replaced by a Hispanic male, and that, in 2010,

20

Defendant employed all Hispanic employees in its management positions under DeHaven, with the exception of one Caucasian General Manager. [Doc. 1 ¶¶ 38, 39, 40].

Defendant moves for summary judgment, arguing that Plaintiff cannot prove that her termination was the result of discrimination and that her termination was the result of a long history of poor work performance. [Doc. 27-1]. Defendant first contends that Plaintiff cannot establish a *prima facie* case of discrimination because she cannot show that she was replaced by someone outside her protected class or that she was treated less favorably than any similarly situated employee. [*Id*. at 11-14]. Second, Defendant argues that Plaintiff cannot overcome its proffered non-discriminatory reason for the decision to terminate her and that she therefore cannot meet her burden to show pretext. [*Id*. at 15-30].

### A.    *Prima Facie* **Case**

To state a disparate-treatment claim under Title VII based on circumstantial evidence, a plaintiff must show: " '(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action; and (4) [s]he was replaced by a person outside [her] protected class or was treated less favorably than a similarly-situated individual outside [her] protected class.' " *Maynard*

21

*v. Bd. of Regents of the Div. Of Univs. of Fla. Dept. of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11ᵗʰ Cir. 2003); *see also Hawkins v. BBVA Compass Bancshares, Inc.*, --- Fed. Appx. ----, ----, 2015 WL 3462294, at *4 (11ᵗʰ Cir. June 2, 2015) (per curiam) (describing *prima facie* standard test as (1) the plaintiff was a member of a protected class; (2) she was qualified to do the job; (3) she was subjected to an adverse employment action; and (4) she was treated less favorably than similarly situated individuals outside her protected class) (citing *Holland v. Gee*, 677 F.3d 1047, 1055 (11ᵗʰ Cir. 2012)).

### 1.    Arguments of the Parties

Defendant argues that Plaintiff cannot prove the fourth prong, that she was replaced by someone outside her protected class.  [Doc. 27-1 at 11].  Defendant argues that Javier Correa, a Hispanic male, did not replace Plaintiff because he transferred to the Mall of Georgia restaurant in the General Manager position, not as an Apprentice. [*Id.*].  Defendant further argues that Correa could not have replaced Plaintiff because Correa transferred on October 25, 2010, three days before her managers made the decision to terminate Plaintiff on October 28, 2010.  [*Id.* (citing *Hawkins v. Ceco Corp.*, 883 F.2d 977, 984 (11ᵗʰ Cir. 1989))].  Defendant acknowledges that a person with a different title may replace an employee if they absorb plaintiff's responsibilities, (citing

22

AO 72A
(Rev.8/8
2)

*Hawkins*, 883 F.2d at 982), however, Defendant argues that that is not the case here because the position of Apprentice remained open and available at the Mall of Georgia location for several months and Correa was only a temporary replacement. [*Id*. at 11-12].

Defendant also argues that Plaintiff is unable to prove that she was treated less favorably than people outside her protected class because Plaintiff cannot identify a comparator who is similarly situated in all relevant aspects. [*Id*. at 12]. Defendant argues that Plaintiff cannot use the managers of the Windward restaurant, who also received a failing grade on the October 2010 corporate audit, as comparators because Plaintiff's violations were more significant, and unlike the managers at the Windward restaurant, her performance did not improve. [*Id*.]. First, Defendant argues, there is no evidence that the manager at Windward removed Daily Cashier Review ("DCR") sheets from the restaurant. [*Id*.]. Second, Defendant contends that Plaintiff was not terminated solely because of a failed audit, but was terminated because of her overall poor performance which began prior to the corporate audit. [*Id*. at 13]. Defendant argues that Plaintiff cannot identify another Chipotle manager who retained their employment who (1) had persistent performance issues and the lowest possible performance review score; (2) received a failing corporate audit that revealed eleven

23

cash handling violations; and (3) subsequently failed to remedy those cash handling violations.  [*Id*.].

Plaintiff responds that the decision to terminate Plaintiff was made on October 25, 2010, (citing Ratelle Dep. at 125-28), which was at the same time the decision was made to transfer Correa to the Mall of Georgia.  [Doc. 31 at 5, 6].  Moreover, Plaintiff argues that Ratelle testified that she did not plan to have an Apprentice and a General Manager at that location.  [*Id*. at 5-6].

In reply, Defendant argues that Plaintiff's argument that she was replaced by Correa is not supported by the evidence. [Doc. 32 at 4].  Defendant argues that Plaintiff presents no evidence that Correa performed the same job responsibilities or held the same position.  [*Id*.].  Defendant further argues that Plaintiff only presented Ratelle's testimony that she believed Plaintiff should be terminated and she had that opinion prior to Correa's transfer.  [*Id*. at 4-5].  However, Defendant claims, Plaintiff was not terminated by Ratelle and therefore her testimony presented is irrelevant.  [*Id*. at 5].  According to Defendant, the evidence undisputably shows that Plaintiff's termination paperwork was not completed until after Correa's transfer documents were filed.  [*Id*. (citing Doc. 31-8; Doc. 31-9)]).  Defendant argues that because Plaintiff presents no evidence that she was replaced by someone outside her protected class and did not

AO 72A
(Rev.8/8
2)

contest that she was not treated less favorably than any similarly situated employee, she fails to make a *prima facie* case and summary judgment is proper.  [*Id*.].

###         2.        Discussion

Initially, the Court observes that there is a factual dispute as to who was the final decision maker in this matter.  Plaintiff appears to assert that Ratelle and DeHaven made a joint decision to terminate Plaintiff, while Defendant insists that DeHaven was the final decision maker.  [Doc. 31 at 5, 6; *see* Doc. 32 at 5].  However, later in Plaintiff's brief, Plaintiff only references what DeHaven considered during the termination, which may or may not have been what Ratelle considered.  [*See, e.g., id.* at 12, 22].  It appears to the Court that the burden of proving who was the final decision maker rests with the Plaintiff as Plaintiff has the initial burden of making a *prima facie* case and the overall burden to prove discrimination.  *See, e.g., Brooks*, 446 F.3d at 1162; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).  However, the Court need not decide whether DeHaven was the sole final decision maker or whether that responsibility was shared with Ratelle, as Plaintiff has not presented sufficient evidence to show that DeHaven, either by himself or jointly with Ratelle, made a decision on or before October 25, 2010 to terminate Plaintiff.  At most, Plaintiff only presents evidence that Ratelle had made a decision to terminate

Plaintiff on or before October 25.  [*See* Doc. 31 at 5 (citing to Ratelle Dep. at 125-28)].

However, Plaintiff presents no evidence to suggest that DeHaven had made that

determination on or before October 25.  Plaintiff asks the Court to infer that because

a General Manager was transferred to the Mall of Georgia location one day before

Plaintiff was terminated, that alone means that the decision to terminate Plaintiff was

made at the same time.  However, without a showing that DeHaven, as an undisputed

final decision maker, made the decision to terminate Plaintiff on the same day the

General Manager was transferred, there is no reason for the Court to infer that the

decision was made earlier than October 26, 2010.

That is not to say, however, that Plaintiff was not replaced by Correa.  In order

to determine whether an employee was replaced, the Court must examine the

employee's position and responsibilities and, if the employee's position is clearly

delineated and responsibilities are well-defined, "the court should focus on the person

that physically replaced the employee or consider whether the job title was actually

filled."  *Hawkins*, 883 F.2d at 982.  Merely looking at the job title is not dispositive as

the "plaintiff must develop a record to show that a purported replacement actually

performed the plaintiff's duties."  *Id.*; *see also Rollins v. Techsouth, Inc.*, 833 F.2d 1525

(11th Cir. 1987) (finding that plaintiff was replaced where plaintiff trained the new

AO 72A
(Rev.8/8
2)

employee to perform plaintiff's work and the company eliminated plaintiff's job title after discharging her); *cf. Jones v. W. Geophysical Co. of Am.*, 669 F.2d 280, 283-84 (5th Cir. 1982) (finding that plaintiff was not replaced where purported replacement's job duties were completely different).

It is undisputed that  Plaintiff was performing the work of a General Manager. (Pl.  SOF ¶ 2; Def. Resp. ¶ 2; Def. SOF ¶ 6; Pl. Resp. ¶ 6).  Defendant argues that Correa performing Plaintiff's duties was only "temporary" as the Apprentice position remained open and available at the Mall of Georgia for several months and therefore Plaintiff was not replaced.  [Doc. 27-1 at 12].  However, Defendant does not present any evidence, such as a job posting, to show that the position of Apprentice was "open and available" at the Mall of Georgia restaurant.  To the contrary, the evidence suggests that Chipotle had no intention of staffing the Mall of Georgia restaurant with both a General Manager and an Apprentice.  (*See* Def. SOF ¶¶ 10, 11; Ratelle Dep. at 127-28). Moreover, Defendant also used the word "replaced" to describe other situations where a new employee with a different job title took over the responsibilities of a former employee.  *See e.g.* Def. SOF ¶ 28 ("[Nipul] Patel," a Restaurateur located only at the Mall of Georgia restaurant before being transferred, Def. SOF ¶¶ 22, 23, 28, "was not replaced with a General Manger because the intention was that Doxie would soon be

27

promoted to that position."); Def. SOF ¶ 65 ("When DeHaven [Restaurateur] replaced Burrows [Area Manager] as Doxie's mentor, Ratelle discussed with him Doxie's leadership issues . . . .).  Given that the Mall of Georgia Restaurant was not staffed with both a General Manager and an Apprentice, Correa performed substantially the same duties as Plaintiff, Defendant has failed to demonstrate that such performance was merely temporary, and since it is not uncommon for employees in one job title to perform some if not all the duties in another job title, the Court concludes that Plaintiff has made out a *prima facie* case that she was replaced by someone outside of her protected class.  On the other hand, as Plaintiff did not attempt to assert a *prima facie* case based on being treated less favorably than a similarly situated employee outside her protected class, Plaintiff has abandoned this argument.  *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (holding that legal claim or argument not addressed in briefs is deemed abandoned).[17]

---

[17]    In her complaint, Plaintiff also alleged that she was discriminated as to discipline, mentorship and support as well as with regard to her termination. [*See* Doc. 1, ¶¶ 54, 64].  In responding to Defendant's summary judgment motion, Plaintiff did not respond to Defendant's arguments, [Doc. 27-1 at 19-21], on these claims.  [*See generally* Doc. 31].  As a result, the Court considers those claims abandoned, *Access Now, Inc.*, 385 F.3d at 1330, and therefore **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED** on Plaintiff's claims for discriminatory discipline, mentoring and support apart from her termination claims.

28

## B.      Legitimate, Non-Discriminatory Reason

Having concluded that Plaintiff has established a *prima facie* case as to her termination claim, the Court next considers whether Defendant has proffered a legitimate, non-discriminatory reason for the challenged employment action.  This burden is "exceedingly light."  *Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1061 (11th Cir. 1994) (quotations omitted); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997) (per curiam) (same).  There is no requirement that the defendant prove its reason, i.e., that it was actually motivated by the proffered reason.  *Wilson*, 376 F.3d at 1087; *see also St. Mary's Honor Ctr.*, 509 U.S. at 509 ("[T]he determination that a defendant has met its burden of production (and has thus rebutted any legal presumption of intentional discrimination) can involve no credibility assessment.  For the burden-of-production determination necessarily precedes the credibility-assessment stage.").  Instead, the employer must only introduce admissible evidence to support the challenged employment actions.  *Burdine*, 450 U.S. at 254-55.  "Although this burden is not onerous, . . . neither is it a mere formality."  *Walker v. Mortham*, 158 F.3d 1177, 1184 (11th Cir. 1998) (quoting *Burdine*, 450 U.S. at 253).  At this stage, a defendant-employer must:

29

> clearly set forth, through the introduction of admissible evidence, the reason for its adverse employment decision, and that reason must be legally sufficient to justify a judgment for the defendant.

*Id.* (quoting *Burdine*, 450 U.S. at 253).  The Eleventh Circuit has held that there must be "evidence that asserted reasons for discharge were actually relied on or the reasons are not sufficient to meet defendant's rebuttal burden."  *IMPACT v. Firestone*, 893 F.2d 1189, 1194 (11th Cir. 1990) (quoting *Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 775 (11th Cir. 1982)).   If the proffered reason is one that might have motivated a reasonable employer, the employee "must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason."  *Chapman v. Al Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

### 1.    Arguments of the Parties

Defendant states that Plaintiff was terminated for a long history of poor work performance.  [Doc. 27-1 at 6].  Defendant elaborated that Plaintiff had persistent performance issues, she received the lowest possible score on a performance review just months before termination, she received a failing corporate audit that demonstrated significant cash handling violations, and she subsequently failed to remedy those violations.  [*Id.* at 13].  Defendant also noted that Plaintiff was seen arriving to work

30

in her pajamas, leaving work in the middle of her shift, and not scheduling herself the required number of hours an Apprentice must work.  [*Id*. at 16].

In her response, Plaintiff argues that Defendant fails to succinctly articulate its reasons, but instead makes broad general assertions that Plaintiff had a documented overall poor performance, she was repeatedly warned, and she was reprimanded. [Doc. 31 at 6].  However, Plaintiff denies these assertions and thus, she argues, she is entitled to survive summary judgment.  [*Id*.].  Plaintiff further suggests that Defendant has proffered inconsistent reasons which calls into question Defendant's credibility and thus Plaintiff is entitled to survive summary judgment.  [*Id*. at 7 (citing *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194 (11th Cir. 2004)].  Here, Plaintiff argues, Defendant ignores the testimony of DeHaven and Ratelle regarding the alleged reasons for termination.  [*Id*.].

Plaintiff begins her attack on Defendant's proffered reason by arguing that, in the month that DeHaven was Plaintiff's supervisor, DeHaven never discussed any performance issues with Plaintiff and never provided her any mentoring.  [*Id*. at 7-8]. Prior to DeHaven being Plaintiff's immediate supervisor, Plaintiff maintains that she did not have any documented performance issues.  [*Id*. at 8].  Rather, Plaintiff argues, she had only two entries in her Development Journal, which Plaintiff argues is not a

31

disciplinary tool, and neither DeHaven nor Ratelle entered any entries in Plaintiff's Development Journal. [*Id*.]. Thus, Plaintiff disputes that she had performance issues. [*Id*.].

Plaintiff also argues that Defendant relies on four alleged documents in its decision to terminate Plaintiff: (1) the October 4, 2010 audit; (2) the alleged July 2010 performance review; (3) the alleged 2010 PIP; and (4) the alleged second October 2010 audit report. [*Id*.]. Plaintiff argues that of these four documents, only the October 4, 2010 audit exists and Plaintiff was not disciplined as a result of this audit. [*Id*. at 8-9]. Moreover, she contends that the Windward restaurant also received a failing corporate audit and that neither DeHaven nor Ratelle provided any evidence that they considered Plaintiff's audit to contain more significant violations. [*Id*. at 9]. To the contrary, Plaintiff argues that DeHaven considered the corporate audit to be unfair, unjust and too harsh, and thus did not take any disciplinary action against any of the failing restaurants. [*Id*. at 9-10]. Plaintiff argues, however, that Defendant primarily relied on this audit when responding to the EEOC. [*Id*. at 10].

Plaintiff also argues that the basis for Defendant's decision to terminate Plaintiff was based on an alleged second October 26, 2010 audit conducted by DeHaven and West, however, Defendant cannot produce the audit. [*Id*. at 11]. Moreover, Defendant

32

refers to this audit as a "complete" audit, (citing DeHaven Dep. at 85-88; Ratelle Dep. at 58-59; 78-80), however, Plaintiff argues that West contradicts this assertion as West stated that the audit was not recorded, done last minute, she considered it unique, one she had never done before, and it was not "complete," (citing West Dep. at 36-37; 86; 95; 98). [*Id.*].  Plaintiff argues that the second audit does not exist and Defendant could not rely on an audit that occurred after October 25, 2010 when DeHaven and Ratelle chose to terminate Plaintiff. [*Id.* at 11-12].  Furthermore, Plaintiff argues, West did not send her email of what purported to be an audit to DeHaven and Ratelle until October 30, 2010, after Plaintiff was notified of her termination on October 28, 2010. [*Id.* at 12].  Thus, Plaintiff argues, Defendant could not have concluded that Plaintiff had a repeated pattern of cash handling violations in making the decision to terminate Plaintiff. [*Id.*].  To the contrary, Plaintiff argues, that other than the October 4, 2010 audit, every audit Plaintiff received in 2010 was great. [*Id.* at 12-13].

In reply, Defendant argues that it has met its burden of production in producing documented evidence of demonstrated poor performance citing: (1) Plaintiff's repeated failures to follow basic cash handling procedures; (2) Plaintiff struggled to develop and retain her managers; (3) Plaintiff's supervisor Burrows made a decision to terminate

Plaintiff for poor performance; (4) Plaintiff received the lowest possible rating on her 2010 mid-year performance review which resulted in her not receiving a mid-year bonus; (5) Plaintiff was not scheduling herself the required number of hours for her position; (6) Plaintiff's restaurant had the lowest sales and gave away the most free food of any of DeHaven's restaurants; (7) Plaintiff's restaurant received a failing operations rating and eleven cash handling violations on the corporate audit; (8) Plaintiff took home daily cash receipts; and (9) in a twenty-six day period, Plaintiff's restaurant had fourteen cash handling violations.  [Doc. 32 at 3-4].

## 2.   Discussion

The Court agrees that Defendant has met its burden of production to demonstrate a legitimate, non-discriminatory reason for Plaintiff's termination.  Plaintiff argues that "[Defendant] fails to succinctly articulate its reasons" and that Defendant made broad assertions that Plaintiff had a documented overall poor performance, [Doc. 31 at 6], but the Court disagrees.  Defendant clearly stated that Plaintiff was terminated for poor performance and provides numerous examples to that effect.  [*See* Doc. 27-1 at 15-16, 18-19; Doc. 32 at 6-7].

Plaintiff would have the Court ignore most of Defendant's evidence of poor performance.  First, Plaintiff appears to argue that since DeHaven did not discuss any

34

performance issues with Plaintiff, she thus did not have any performance issues while DeHaven was her supervisor.  [*See* Doc. 31 at 7-8].  As noted, Defendant's burden as to a non-discriminatory reason is one of production, and the Court is not to engage in credibility determinations at this point of the analysis.  *St. Mary's Honor Ctr.*, 509 U.S. at 509.  However, just because DeHaven did not discuss her performance issues with her does not mean that neither he nor any other supervisor in Defendant's employ perceived her performance shortcomings.  In fact, Defendant presented evidence of Plaintiff's failed corporate audit and the second October 26, 2010 "audit." Plaintiff similarly argues that because DeHaven did not discipline Plaintiff for the October 4, 2010 corporate audit, the Court should not consider it as a reason to terminate Plaintiff.  [Doc. 31 at 8-10].  This argument also is rejected because Defendant does not assert that the October 4 corporate audit was the sole reason for Plaintiff's termination, instead arguing that it was just one instance out of many that demonstrated a documented history of poor performance.

Plaintiff also challenges the second October 26, 2010 "audit" as a legitimate reason.  [*Id*. at 10-13].  Plaintiff appears to contend that the "audit" did not exist since Defendant cannot produce a formal document that traditionally corresponds with "audits," and this particular "audit" was a complete departure from other "audits."

35

[*Id.* at 11]. Even assuming that the examination conducted by West and DeHaven on October 26, 2010 was not an official "audit," again the Court cannot engage in credibility analysis at this stage. Moreover, the Court sees no reason–and Plaintiff offers no support–why it should ignore West and DeHaven's observations and findings, or why an employer could not rely upon such an examination to make an employment decision. *Loberger v. Del-Jen, Inc.*, --- Fed. Appx. ----, ----, 2015 WL 3895428, at *3 (11th Cir. June 25, 2015) ("A legitimate, non-discriminatory reason is one that might motivate a reasonable employer.") (citing *Chapman*, 229 F.3d at 1030); *see also Robinson v. Hoover Enterprises, Inc.*, No. 1:03-CV-2565-TWT, 2004 WL 2792057, at *9 (N.D. Ga. Oct. 20, 2004) (holding that undisputed results of employer's audit was legitimate nondiscriminatory reason that would motivate reasonable employer). In any event, Plaintiff appears to acknowledge that West and DeHaven conducted some sort of an investigation, but did not memorialize their findings in a formal document. [*See id.* (citing West Dep.)]. As a result, the Court rejects Plaintiff's argument.

Plaintiff further argues that the Court should ignore the "audit" as a basis for the termination because the decision had been made to terminate Plaintiff on or before October 25, 2010. [*Id.* at 12 (citing Ratelle Dep. at 125-28)]. However, as discussed above, Plaintiff has not shown that DeHaven, as a final decision maker, made the

36

decision to terminate Plaintiff on or before October 25. Further, the Court rejects Plaintiff's claim that, since West did not email her findings until October 30, 2010, DeHaven could not have relied on this as a basis for termination because DeHaven had already notified Plaintiff of her termination on October 28, 2010. [*Id.*]. Although this is a true statement, Plaintiff ignores the fact that West *and* DeHaven conducted the "audit" together, and DeHaven testified that after the "audit," he and West went to the lobby of the restaurant and discussed their findings. (Def. SOF ¶ 81; DeHaven Dep. at 301-04). Thus, DeHaven had first-hand knowledge of the violations prior to notifying Plaintiff of the decision to terminate her. (*See* Pl. SOF ¶ 80). Therefore, DeHaven could have relied on his own observations and findings of the examination as a basis for termination.

Next, Plaintiff argues that prior to DeHaven's arrival, she did not have any documented performance issues, only two entries in her Development Journal which Plaintiff argues was not used for disciplinary purposes. [*Id*. at 8]. First, "differences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination." *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1261 n.5 (11th Cir. 2001). Second, although Plaintiff appears to challenge the use of the Development Journal as a vehicle for criticizing her performance, she offers no support

37

for invalidating a performance critique based on the form upon which the deficiency was memorialized.  In any event, her Development Journal reflected that Plaintiff was not consistent in her performance and not meeting expectations.  [Doc. 27-19 at 1]. Cash handling issues also were identified as areas that needed improving.  [Doc. 27-17; Doc. 27-19 at 1].   Thus, the evidence indicates that the Development Journals documented performance issues.

Defendant also presented other evidence that documented Plaintiff's performance issues prior to DeHaven's supervision and critique.  For example, Defendant presented a Restaurant Manager Semi-Annual Bonus Plan dated March 2010, for the period of July through December 2009, which the document noted that Plaintiff's restaurant had cash handling issues.  [Doc. 32 at 6; Doc. 27-14 at 2].  On another occasion, an Area Manager reported that Plaintiff was not an effective leader in that she needed to provide more direction and leadership and that Plaintiff and her crew lacked energy. [Doc. 32 at 6; Doc. 27-18 at 7].

Finally, Plaintiff argues that, other than the corporate audit, all of her other audits were good, thus contradicting Defendant's argument that Plaintiff had cash handling issues.  [Doc. 31 at 12].  However, as discussed above, Defendant has presented evidence of Development Journals, the formal corporate audit, and the final cash

38

"audit" examination, as well as other evidence that demonstrate that Plaintiff had longstanding cash handling issues.

Therefore, the Court finds that Defendant has met its burden in producing a legitimate, non-discriminatory reason for terminating Plaintiff.

### C.    Pretext

Under the *McDonnell-Douglas* paradigm, the burden now shifts back to Plaintiff to show that the reasons articulated by Defendant are pretext for prohibited conduct. A plaintiff survives summary judgment if she provides evidence sufficient to allow a reasonable fact finder to determine that the employer's articulated, nondiscriminatory reasons are pretext for unlawful discrimination.  *McDonnell Douglas Corp.*, 411 U.S. at 804-07; *Reeves*, 530 U.S. at 143 (holding that "plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence") (internal citations omitted); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).  Put another way, the "pretext analysis focuses on a narrow question:  Would the proffered evidence allow a reasonable factfinder to conclude that the articulated reason for the decision was not the real reason?" *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1276 (11th Cir. 2002).

In evaluating a summary judgment motion, "the district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson*, 405 F.3d at 1289 (quoting *Combs*, 106 F.3d at 1538) (internal citations omitted). To show pretext, a plaintiff cannot merely quarrel with the wisdom of the employer's reason, but "must meet that reason head on and rebut it." *Chapman*, 229 F.3d at 1030. A finding that the employer's reason is not worthy of credence together with the elements of the *prima facie* case may, though not always, prove intentional discrimination, although under those circumstances, it does not demand judgment for plaintiff. *See Meeks v. Computer Assocs. Intern.*, 15 F.3d 1013, 1019 n.1 (11th Cir. 1994) (citing *St. Mary's Honor Ctr.*, 509 U.S. at 511).

### 1.    Arguments of the Parties

Plaintiff argues that Defendant's reason is unworthy of credence and Defendant has provided shifting reasons for Plaintiff's termination. [Doc. 31 at 13]. As examples, Plaintiff argues that Chipotle provided a multitude of false statements in its position

40

statement to the EEOC,[18] specifically that Chipotle represented that DeHaven and West counseled Plaintiff regarding her need for improvement over the years although DeHaven admitted in depositions that he never counseled Plaintiff and West was never in a position to supervise or counsel Plaintiff.  [*Id.* at 14, 15 (citing [Doc. 31-4 at 9]; DeHaven Dep. at 128-29; West Dep. at 32, 38-39)].  Plaintiff further denies Chipotle's representation to the EEOC that Ratelle counseled Plaintiff regarding her need for

---

[18]      Defendant objects to the Court's consideration of the Position Statement, which Defendant asserts was not verified by any witness, was written by counsel, and was an argument of counsel and is therefore not admissible evidence as it constitutes hearsay.  [Doc. 32 at 10 n.1; Def. Resp. ¶ 106].   Defendant's objection is **OVERRULED**.  Although written by counsel, Defendant's position statement was Chipotle's official response to the EEOC charge of discrimination and is an admission by a party-opponent and, therefore, is not hearsay. Fed. R. Evid. 801; *Cormack v. N. Broward Hosp. Dist.*, No. 08-61367-CIV, 2009 WL 2848998, at * 3 (S.D. Fla. Aug. 28, 2009); *see also Chapman v. AI Transport*, 180 F.3d 1244, 1252 (11th Cir. 1999) (finding that the district court abused its discretion in excluding defendants' EEOC position statement as the jury could have determined based on the statement that defendants were untruthful), *overruled on other grounds by Chapman*, 229 F.3d at 1030; *Frazier v. Indiana Dept. of Labor*, No. IP01-0198-C-T/G, 2003 WL 21254424, at *5 (S.D. Ind. Mar. 17, 2003) ("An employer's position statement in an EEOC proceeding may be admissible to the extent it constitutes an admission, or to show the employer has given inconsistent statements in justifying its challenged decision, which may tend to prove that its stated reasons are pretexts."); *Kirby v. J.C. Penney Corp., Inc.*, No. 2:08-cv-1088, 2009 WL 3572494, at *3-4 (W.D. Pa. Oct. 26, 2009); *Mugavero v. Arms Acres*, Inc., No. 03 Civ. 05724 (PGG), 2009 WL 1904548, at *4 (S.D. N.Y. July 1, 2009) (holding that defendant's EEOC position statement was not hearsay, was admissible, and not excludable as highly prejudicial under Fed. R. Evid. 403).

AO 72A (Rev.8/82)

improvement and argues that Chipotle has failed to produce any supporting documents. [*Id*. at 15]. Plaintiff further argues that Chipotle represented in its response to the EEOC that DeHaven pointed out basic tasks to Plaintiff that Plaintiff failed to complete, however, in his deposition DeHaven could not identify a single basic task he assigned to Plaintiff that she failed to complete. [*Id*. at 14 (citing [Doc. 31-25; Doc. 27-4 at 300-01, 311])]. Also, Plaintiff points out that Chipotle represented to the EEOC that Plaintiff had cash handling issues, however, DeHaven could not identify a single conversation with Plaintiff regarding cash handling issues. [*Id*. at 14 (citing [Doc. 27-4 at 308])]. Plaintiff also argues that Chipotle erroneously represented that in her 2009 performance reviews she received a score of "2" out of "5" with "5" being the best, however, a "1" is actually the best. [*See id*. at 16-17 (citing [Doc. 31-4 at 7; Doc. 31-17; Doc. 31-18])].

Plaintiff then argues that after the EEOC determined that there was reasonable cause to conclude that Plaintiff was discriminated against based on her race, Defendant shifted its reasons for termination and alleged for purposes of this case that Plaintiff was terminated due to an alleged poor 2010 performance review and an alleged second October 2010 audit. [*Id*. at 15-16]. Plaintiff also argues that, in responding to the EEOC, Defendant did not assert that Plaintiff was terminated after a second

42

October 2010 audit and did not provide the alleged 2010 performance review or the alleged second October 2010 audit to the EEOC.  [*Id*. at 16].

Next, Plaintiff argues that Defendant's failures to follow its own disciplinary process and to maintain its personnel records give rise to an inference of discrimination. [*Id*. at 17].  Plaintiff contends that Errnia Dennis, an HR specialist at Chipotle, DeHaven and Ratelle all testified that Chipotle follows progressive discipline procedures which included verbal counseling, written counseling, performance discussions, and performance improvement plans ("PIP").  [*Id*. at 18 (citing DeHaven Dep. at 105; Ratelle Dep. at 47-51; Dennis Dep. at 14-18)].  Plaintiff argues that Chipotle management used the written performance discussion forms if more was needed beyond the Development Journal, then an employee would be placed on a PIP, and then terminated.  [*Id*. at 18-19 (citing Dennis Dep. at 13-14, 16, 84, 113-14)]. Moreover, Plaintiff argues, Dennis was not consulted regarding the decision to terminate Plaintiff even though Dennis was normally consulted as to these decisions. [*Id*. at 19 (citing Dennis Dep. at 14-15, 84)].  Therefore, Plaintiff argues, Defendant's failure to follow its own procedures creates an inference of discrimination.  [*Id*. at 19].

Plaintiff further attempts to discredit Defendant by arguing that it has failed to produce any signed document to support its assertion that Plaintiff was a poor

43

performer, and only produced an unsigned performance review in 2010 allegedly reviewed by Burrows, which Plaintiff in turn contends that Burrows did not sign or authenticate. [*Id*. at 20]. Plaintiff argues that DeHaven admitted that performance reviews must be signed by the manager and employee in order to be effective. [*Id*. (citing DeHaven Dep. at 74-75)]. Plaintiff further argues that the performance reviews she received from 2006 to 2009 met or exceeded expectations. [*Id*.]. At worst, Plaintiff argues, Plaintiff had two entries in her Development Journal, but that Dennis testified that the Development Journal was not disciplinary. [*Id*.]. Moreover, Plaintiff argues the jury could clearly draw an inference that the alleged second October 2010 audit was a pretextual attempt to justify Plaintiff's termination because, as West described, the alleged audit was "one that was not recorded, done last minute, unique, one she had never done before, a deviation from what she had done before, and not complete." [*Id*. at 21 (citing West Dep. at 36-37, 86, 95, 95)].

Plaintiff also challenges Defendant's other reasons for terminating Plaintiff. First, Plaintiff argues that there is no evidence that Plaintiff gave food to her sister. [*Id*. at 21-22]. Plaintiff contends that DeHaven did not watch the video that allegedly shows Plaintiff giving food to her sister and in any event, DeHaven does not know what Plaintiff's sister looks like. [*Id*. at 21 (citing DeHaven Dep. at 68-71)]. Plaintiff further

44

argues that Ratelle also did not view the alleged video and has no knowledge that Plaintiff gave food to her sister or any other family member. [*Id.* (citing Ratelle Dep. at 117-19)]. Plaintiff also submits that Defendant has failed to produce the video and, in any event, Plaintiff denies that she gave food to anyone in her family. [*Id.* at 22].

Next, Plaintiff challenges Defendant's assertion that she was terminated because of her work schedule. Plaintiff argues that DeHaven did not consider any issues related to her schedules and hours in his termination decision. [*Id.* at 22 (citing DeHaven Dep. at 279)]. Rather, Plaintiff argues, DeHaven and Ratelle stated that they considered the alleged 2010 performance review, an alleged PIP, a 30-day performance plan, and four audits of the Mall of Georgia restaurant. [*Id.* at 22 (citing DeHaven Dep. at 74; Ratelle Dep. at 90-92)]. However, Plaintiff denies that she received a 2010 performance review and being placed on a PIP, and Defendant failed to produce those documents, as well as the alleged development plan and the second October 2010 audit. [*Id.* at 22-23].

Furthermore, Plaintiff states that she believes she was terminated so that Defendant could hire a Hispanic General Manager due to the racial tensions she had with her Hispanic employees. [*Id.* at 23-25]. Plaintiff argues Ratelle's credibility is at issue here because Plaintiff and Dennis both testified that they reported the racial

45

tensions to Ratelle, but Ratelle denies being informed of a racial issue.  [*Id.* at 23 (citing Ratelle Dep. at 135-37)].  Moreover, Plaintiff argues that DeHaven's track record shows a clear bias of hiring Hispanic males as DeHaven promoted Aldo Pereira, a Hispanic male, to the General Manager position at the Johns Creek restaurant, Martin Pereira, a Hispanic male, to the General Manager position at the Windward restaurant, and he promoted four other Hispanic males.  [*Id.* at 24 (citing DeHaven Dep. at 47-48; 182-89)].  In further support, Plaintiff contends that she recommended to DeHaven that he promote a black female to Kitchen Manager, but instead he promoted a Hispanic male.  [*Id.* at 25].  Additionally, Plaintiff argues, when DeHaven terminated Plaintiff, DeHaven asked Plaintiff if a certain black employee was a good performer and Plaintiff questioned why DeHaven would ask about the performance of that employee and not the Hispanic male.  [*Id.*].

Finally, with regard to Plaintiff's gender claim, Plaintiff argues that DeHaven made a comment about Burrows that, as a woman, she should have stepped up to mentor Plaintiff.  [*Id.*].  Plaintiff alleges that this comment offended her and clearly shows that DeHaven has a bias view towards women.  [*Id.*].

Defendant argues that rather than come forward with evidence of pretext, Plaintiff simply denies evidence of her poor performance or argues that evidence was

46

not previously produced.  [Doc. 32 at 7-8].  Defendant argues that it is not enough for Plaintiff to simply deny evidence and she must do more than give unsupported testimony to survive summary judgment.  [*Id*. at 8 (citing *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 851 (11th Cir. 2000))].  Chipotle concedes that the Court may rely on all evidence that would be admissible at trial.  [*Id*.].

Defendant argues that it has not wavered on its stated reason for terminating Plaintiff, that she was terminated for poor performance and that Defendant's citation to several incidents of poor performance does not create inconsistencies nor is it evidence that its position has shifted.  [*Id*. at 8-9].  Defendant contends that it is permitted to elaborate on its reasons for terminating Plaintiff.  [*Id*. at 9 (citing *Standard*, 161 F.3d at 1332; *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998); *Keaton v. Cobb Cnty.*, 545 F. Supp. 2d 1275 (N.D. Ga. 2008) (Story, J.))].  Defendant argues that it is not required to identify one specific incident that led to the termination, as Plaintiff appears to argue.  [*Id*.].

To Plaintiff's argument that Defendant cannot rely on the October 4, 2012 corporate audit as a reason for termination because DeHaven did not take any disciplinary action based on it, Defendant argues that this was considered in making the decision to terminate her as one of many incidents of poor performance including her

47

performance before and after the corporate audit.  [*Id*. at 10].  To Plaintiff's suggestion that DeHaven could not have considered Plaintiff's poor performance prior to taking over the Mall of Georgia restaurant, Defendant argues that Plaintiff acknowledges that DeHaven was on notice of Plaintiff's past performance issues when he took over the restaurant, and she also acknowledged that Burrows intended to terminate Plaintiff.  [*Id*. (citing Def. SOF ¶¶ 46, 49, 63; Pl. Resp. ¶¶ 46, 49, 63)].

Defendant further argues that the managers at the Johns Creek and Windward restaurants cannot be used as comparators because Plaintiff's performance prior to and after the corporate audit distinguishes her situation from those managers.  Moreover, Defendant argues that the deficiencies uncovered by the corporate audits are not identical since, for example, the other managers were not accused of taking home the Daily Cash Handling Receipts.  [*Id*. at 11 & n.2].

To the extent Plaintiff relies on the EEOC determination, Defendant argues that it does not create a genuine issue of material fact where, as here, it is based on an understanding of inaccurate evidence or standard(s) of law.  [*Id*. at 11 (citing *Keaton*, 545 F. Supp. 2d at 1275)].  Defendant argues that the EEOC did not consider the employment history of any other employee in making its determination and thus its determination was based on factual deficiencies and a misapplication of the law.  [*Id*.].

48

To Plaintiff's argument that Defendant has not produced a "signed" copy of the 2010 mid-year performance review, Defendant argues that Plaintiff points to no authority that an unsigned performance review is inadmissible or does not accurately reflect the manager's opinion regarding the employee's performance. [*Id.* at 12-13]. Moreover, Defendant argues, Plaintiff admits that she did not receive a mid-year bonus in 2010, and it is undisputed that only a manager who received a four on her performance review will not receive a bonus. [*Id.* at 13 (citing Def. SOF ¶¶ 24, 49; Pl. Resp. ¶¶ 24, 49)]. Defendant argues that while Plaintiff does not remember receiving the lowest possible score on her 2010 mid-year performance review, her unsupported testimony and false allegations alone do not create a genuine issue of material fact. [*Id.*].

Defendant further argues that Plaintiff's reliance on her past good performance is irrelevant to the analysis and Plaintiff does not provide any authority that evidence of past good performance creates an issue of fact as to pretext or undermines Defendant's legitimate, non-discriminatory reason for terminating her. [*Id.*].

Defendant next argues that Plaintiff's contention that a second October 26, 2010 audit did not occur is baseless and irrelevant. [*Id.*]. Defendant argues that Plaintiff cannot support her claim with evidence, whereas Defendant has produced much

49

evidence to demonstrate that the audit did occur. [*Id*. at 13-14 (citing Def. SOF ¶¶ 78-82; Pl. Resp. ¶¶ 78-82; [Doc. 27-41; Doc. 27-42])]. To the extent that Plaintiff argues that the second October audit did not exist because a specific form was not used, Defendant argues that Plaintiff confuses the facts of the case and that West testified that she did not do a complete audit, but rather only did a cash handling audit. [*Id*. at 14 (citing Pl. SOF. ¶ 82; DeHaven Dep. at 203)].

Next, to Plaintiff's argument that Defendant did not follow its own disciplinary procedures prior to termination, Defendant argues that Chipotle has no progressive disciplinary policy and Plaintiff's argument is unsupported by evidence. [*Id*.]. Although Plaintiff refers to Errnia Dennis' testimony to show that there was such a policy, Defendant argues that Dennis made no such statement, that Plaintiff's counsel characterized it as a progressive disciplinary policy, and Dennis only described best practices for handling performance issues at Chipotle. [*Id*. at 14-15 (citing Def. Resp. ¶ 30)]. Defendant also argues that the fact that Dennis agreed with use of the term is a matter of semantics, neither counsel nor Dennis defined their use of the term, and there is no indication that Dennis understood Plaintiff's counsel's meaning. [*Id*. at 15]. Moreover, Defendant argues, Dennis repeatedly stated that the managers do not always utilize the various methods she articulated for discussing performance issues. [*Id*.].

50

Defendant contends that despite having all of Chipotle's policies and procedures, Plaintiff did not and cannot cite to any actual progressive disciplinary policy because Chipotle does not maintain one and Dennis' subjective opinion is irrelevant. [*Id.*].

Next, Defendant argues that Plaintiff has not shown that either Ratelle or DeHaven had any discriminatory animus. [*Id.* at 15-18]. Although Plaintiff stated that she believes that Ratelle and DeHaven discriminated against her and this belief is more than a strong basis for a jury to agree with her, Defendant argues that Plaintiff's mere belief is insufficient to withstand summary judgment. [*Id.* at 15-16 (citing *Aldabblan v. Festive Pizza, Ltd.*, 380 F. Supp. 2d 1345, 1353 (S.D. Fla. 2005))]. Defendant argues that Plaintiff's argument that Ratelle requested that Plaintiff not go to Human Resources with her claim of racial tensions fails to show how this allegation establishes that Ratelle held a discriminatory animus against African-Americans. [*Id.* at 16]. Moreover, Defendant argues that this argument is not supported by the evidence as Plaintiff did in fact speak to Human Resources about the problems among her subordinate employees, she terminated employees for being racially discriminatory, and she did this with Ratelle's support. [*Id.* (citing Def. SOF ¶¶ 101-06; Pl. Resp. ¶¶ 101-06]. Defendant further argues that Plaintiff has provided no evidence from which a jury could reasonably find that Ratelle acted with discriminatory animus. [*Id.* at 16].

51

Finally, Defendant argues that Plaintiff's argument that DeHaven had discriminatory animus based on DeHaven promoting Hispanic males deserves no credence, because Plaintiff has not provided admissible statistical evidence to support her claim. [*Id*. at 17]. Moreover, Defendant argues that the fact that Plaintiff thought it was suspicious that DeHaven would question her about a black female employee is not enough to withstand summary judgment. [*Id*. at 17-18]. Similarly, Defendant argues that no pretext is established by the allegation that DeHaven stated that Burrows should have stepped up as a woman support discriminatory animus. [*Id*. at 18].

### 2.    Discussion

Plaintiff first argues that a genuine issue of fact exists because Defendant made false statements and shifting reasons to the EEOC. [Doc. 31 at 14-17]. Regarding the false statements, Plaintiff mostly refers to the general assertion made by Defendant in its position statement that "[DeHaven, West, and Ratelle] had worked with Doxie on various occasions and each hand [*sic*] counseled Doxie regarding her need for improvement over the years." [Doc. 31-4 at 9]. Plaintiff denies that DeHaven and West ever counseled her and only denies that Ratelle *verbally* counseled her. [Doc. 31 at 14-15]. Plaintiff also identifies Defendant's response to the EEOC's Request for Information, where Defendant stated that Plaintiff failed to complete basic

52

tasks that DeHaven specifically pointed out to her, [Doc. 31-25 at 2]; however, Plaintiff submits that DeHaven could not identify a single basic task he assigned to Plaintiff that she failed to complete.  [Doc. 31 at 14 (citing DeHaven Dep. at 300-01; 311)].  Finally, Plaintiff argues that Defendant erroneously represented to the EEOC that on her 2009 performance evaluations, Plaintiff's score of 2 was a low score with 5 being the highest, when in fact a score of 2 indicated meets or exceeds expectation.  [*Id.* at 16-17].

The Court first notes that Defendant did not qualify the term "counseled" in its position statement and thus could refer to verbal or documented instances of counseling.  Even assuming that these statements are not true, this alone is not enough to establish pretext for discrimination.  Plaintiff fails to demonstrate how these allegedly false statements are relevant to the Court's summary judgment analysis that Defendant's real reason for terminating Plaintiff was not her performance but rather unlawful discrimination.  Even if Defendant exaggerated the instances when Plaintiff was counseled by its management, these false statements do not rebut the documented history of poor performance relied upon in terminating Plaintiff.

Plaintiff also points out that Defendant represented to the EEOC that Plaintiff had cash handling issues, however, Plaintiff argues that DeHaven cannot identify a single conversation he had with Plaintiff regarding any cash handling issues.

[Doc. 31 at 14].  Defendant has not wavered on its position that Plaintiff had cash handling issues, and although DeHaven cannot identify a conversation he had with Plaintiff about them, such failure does not make the allegations about poor cash handling statement false.  As discussed earlier, Defendant cited to Plaintiff's Development Journal, the corporate audit, and the second October cash handling "audit" and other evidence to demonstrate that Plaintiff had cash handling violations.

Plaintiff further argues that after the EEOC issued its determination finding reasonable cause to conclude Plaintiff was discriminated against based on her race, Defendant shifted its reasons and now asserts that Plaintiff was terminated based on an alleged 2010 performance review and the second "audit."  [Doc. 31 at 16].  Plaintiff argues that neither of these assertions were made to the EEOC.  [*Id.*].  The Court finds that Defendant has not provided shifting reasons.  Defendant's reason for terminating Plaintiff has always been based on Plaintiff's poor work performance.  [*See* Doc. 31-4 at 2 ("Doxie was terminated due to her failure to manage her restaurant. . . . The audit revealed that Doxie had been violating multiple Cash Handling policies, Document Retention policies, and Food & Safety policies. . . . ."), 7-8].  The fact that Defendant provided additional specific instances to demonstrate Plaintiff's poor work performance is not evidence of inconsistent reasons.  *Tidwell*, 135 F.3d at 1428 (finding

54

that an additional, but undisclosed, reason for termination does not prove pretext); *Keaton*, 545 F. Supp. 2d at 1305 ("An employer is permitted, however, to elaborate on its reasons for taking an employment action.").

The Court also finds that there is insufficient evidence to support Plaintiff's argument that pretext is proven based on Defendant's failure to follow its discipline procedures. Assuming, as Plaintiff contends, Chipotle has a progressive discipline policy, Plaintiff has not provided any evidence that following the discipline policy was mandatory. *See Ritchie v. Industrial Steel, Inc.*, 426 Fed. Appx. 867, 873 (11th Cir. May 19, 2011) ("[I]f management has discretion as to whether to follow the discipline policy, then a failure to follow the policy does not show pretext.") (citing *Morris v. City of Chillicothe*, 512 F.3d 1013, 1020 (8th Cir. 2008); *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 541 (7th Cir. 2007)); *Coleman v. Ala. State Univ.*, 904 F. Supp. 2d 1245, 1258-59 (M.D. Ala. 2012) (same); *see also Chavez v. Credit Nation Auto Sales*, 49 F. Supp. 3d 1163, 1176 (N.D. Ga. 2014) (Duffy, J.) (rejecting pretext argument because employer reserved the right to use progressive discipline at its discretion). While Plaintiff cites to HR specialist Ernnia Dennis' testimony to support that Chipotle did have progressive discipline procedures, review of the deposition indicates that Dennis referred to the progressive discipline as a "best

55

practice" and consistently maintained that best practices were not always followed. (*See* Dennis Dep. at 14-18, 80, 125-26 (discussing the development journal as an exit strategy and how it can be used to as a means to show a pattern of behavior), 129-33 (discussing how a PIP was not always used prior to termination), 134-37 (stating that best practice prior to termination was to document by any means where an employee needs improving). In this case, ignoring the unsigned 2010 performance review, Plaintiff's journal entries detailing areas for improvement show a pattern of behavior and since these entries were acknowledged by Plaintiff as received, according to Ms. Dennis, this may be sufficient to terminate an employee. (*See* Dennis Dep. at 125-26, 134-37). Moreover, Plaintiff has failed to identify any documented policy by Chipotle that requires its managers to follow the progressive discipline tools that were available. In addition, while Dennis testified that neither Ratelle nor Burrows discussed terminating Plaintiff with her, (Dennis Dep. at 14-15, 84), Dennis did testify that both Ratelle and Burrows discussed Plaintiff's performance issues with her. (Def. SOF ¶ 107; Dennis Dep. at 81-82, 85).

Regarding the October 26, 2010 "audit," Plaintiff argues that since West testified that this audit was not recorded, done last minute, unique and one she had never done before, and deviated from Chipotle's practice and procedure, that this was a pretextual

attempt to justify Plaintiff's termination.  [Doc. 31 at 21 (citing West. Dep. at 36-37, 86, 95, 98)].  However, Plaintiff fails to acknowledge that she was forewarned of the "audit" days before it took place.  In an email from DeHaven to the managers at his restaurants, DeHaven expressed concern over the October 4 corporate audit and wanted to make sure that cash handling had improved since the last audit.  [Doc. 27-41].  To be ready for the return of one of the corporate auditors, DeHaven notified the managers that he would be doing cash audits of Mall of Georgia that week and he "plan[ned] to be very critical to improve." [Id.].[19]  The fact that DeHaven was more concerned about the cash handling than anything else suggests that he was looking for his managers to have improved since the corporate audit and was not looking to do a formal audit.  In any event, the email to all the managers warning them of upcoming audits to check on improvements since the corporate audit negates Plaintiff's suggestion of pretext based on the audit being performed around the time of the decision to terminate her.

Plaintiff next argues that in his deposition, DeHaven stated that part of the reason for Plaintiff's termination was that he viewed a video of Plaintiff giving away free food

---

[19]     Although not determinative of the issues in this case, the Court observes that the fact that Ratelle called in West to assist was likely more for concern about DeHaven's performance with his poor performing restaurants than it was about Plaintiff.

to her sister, however Plaintiff argues that he never met her sister and that he had no

way of knowing what her sister looked like.  [Doc. 31 at 21].  However, Defendant's

statement of facts and reply brief presented a more general argument and evidence that

Plaintiff's restaurant gave away the most free food of any of DeHaven's restaurants.

(Def. SOF ¶ 64[20]; Doxie Dep. at 196-97); [Doc. 32 at 6]; [Doc. 27-49].  Defendant also

produced evidence showing that Plaintiff's restaurant did in fact give away the most

food while at the same time having the lowest sales.  [Doc. 32 at 6 (citing Doc. 27-49)].

Thus, whether DeHaven or Ratelle witnessed Plaintiff giving free food to a family

---

[20]     Plaintiff objects to this statement as Defendant failed to disclose Smiley as a witness as required by Federal Rule of Civil Procedure 26 and N.D. Ga. R. 26. Plaintiff further objects to exhibits produced on September 4, 2014, after the close of discovery.  Plaintiff also asserts that the statement is not material as DeHaven supervised Plaintiff for one month and did not cite this as a basis for his decision and did not review Plaintiff's personnel file. [Doc. 31-1 at 23].

The Court **OVERRULES** Plaintiff's objection on the basis that Defendant failed to disclose Smiley as a witness because Smiley's declaration was not cited in this statement.  The Court **SUSTAINS** Plaintiff's objection to the use of the 2010 Profit & Loss Statements for Mall of Georgia, [Doc. 27-9], as Plaintiff has shown that this document was produced after the close of discovery. [Doc. 31-32 at 2].  Therefore, the undersigned will not consider this document.  However, the statement is supported by Plaintiff's testimony.  (Doxie Dep. at 196-97 (acknowledging that there is a document indicating that Plaintiff's restaurant had the lowest sales, but gave away the most free food but that she did not perceive that to be a problem)).  Since the Court finds this fact to be material to the issues before it, Plaintiff's objection is **OVERRULED**.

58

member is irrelevant as the argument was made that Plaintiff, or her restaurant, generally gave away free food.

To Plaintiff's argument that DeHaven could not have considered the alleged 2010 performance review and the alleged PIP because DeHaven never reviewed these documents and failed to produce them, [Doc. 31 at 22], this argument fails. DeHaven testified that he considered the information told to him by Burrows, including that Plaintiff had a bad performance review in 2010 and that she placed Plaintiff on a PIP. (Def. SOF ¶¶ 46, 63; DeHaven Dep. at 61-62; 252-53). Plaintiff's contentions about the performance review and PIP do not establish that Defendant's reasons are pretextual, since what is at issue is whether DeHaven had a good faith belief in the information he was provided. *See E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000) (holding that employer's good faith belief that employee had lied in an internal investigation constituted a legitimate non-retaliatory reason for terminating employee regardless of whether employee had actually engaged in misconduct); *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (explaining that "if the employer fired an employee because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief, the

59

discharge is not 'because of race' "). Plaintiff has not presented any evidence that DeHaven did not have a good faith reason to believe Burrows.

Finally, while Plaintiff believes she was terminated because she had racial tensions with her Hispanic crew members, Ratelle instructed Patel to tell Plaintiff not to report these issues to HR because it would make Ratelle look bad, and DeHaven had a track record of hiring and promoting Hispanic male managers, she has not demonstrated that poor performance was not the real reason for her termination as there is documented evidence of Plaintiff's poor performance. Plaintiff has not explained how Ratelle's non-reporting instruction demonstrates discriminatory animus towards Plaintiff in particular or African-Americans in general. At most, as Plaintiff alleges, it shows that Ratelle was only concerned that it would make her look bad, not that she discriminated against Plaintiff based on her race. Plaintiff does not present any other evidence to show that Ratelle had discriminatory animus towards African-Americans.

Nor has Plaintiff presented sufficient evidence to show that DeHaven had a discriminatory animus based on Plaintiff's race or sex. While DeHaven promoted primarily Hispanic males, Plaintiff has not demonstrated that he chose them over qualified non-Hispanic females. Although Plaintiff argues that she recommended an African-American female for a Kitchen Manager position and DeHaven hired a

60

Hispanic male instead, [Doc. 31 at 25], Plaintiff has not presented any evidence that the African-American female was more qualified (or even equally qualified) than the Hispanic male.  In fact, Plaintiff has not presented any evidence of non-Hispanic females that were more qualified than the Hispanic males that were hired.

Nor do the comments made to Plaintiff during her termination rise to a level of discriminatory animus.  The fact that Plaintiff was offended by the questions and comments DeHaven made just after notifying Plaintiff of her termination does not show discriminatory animus to African-Americans or females.

Simply put, Plaintiff has not demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in Defendant's proffered legitimate reason that a reasonable factfinder could find Defendant's stated reason for Plaintiff's termination to be unworthy of credence.

## VI.   *Conclusion*

For the reasons herein, the undersigned **RECOMMENDS** to the District Judge that he **GRANT** Defendant's motion for summary judgment.  [Doc. 27].

As all matters referred to the undersigned under Standing Order 14-01 (N.D. Ga. Aug. 15, 2014), have been resolved, the Clerk is **DIRECTED** to terminate the referral to the undersigned Magistrate Judge.

61

**IT IS SO RECOMMENDED and DIRECTED**, this the 3rd day of August, 2015.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/8
2)