IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SHALETT L. DOXIE,

Plaintiff,

v.                                              1:13-cv-2611-WSD

CHIPOTLE MEXICAN GRILL,
INC.

Defendant.

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Alan J. Baverman's

Final Report and Recommendation ("R&R") [33], recommending that Defendant

Chipotle Mexican Grill, Inc.'s ("Chipotle" or "Defendant") Motion for Summary

Judgment [27] be granted.

I.      BACKGROUND[1]

In November 2003, Chipotle hired Plaintiff Shalett L. Doxie ("Plaintiff" or

"Doxie") as a Supervisor.  (Defendant's Statement of Undisputed Material Facts

---

[1]     The facts are taken from the R&R and the record.  The Court finds no plain
error in the facts.  To the extent that the parties have not objected to any specific
facts determined in the R&R, the Court adopts them.  See Garvey v. Vaughn, 993
F.2d 776, 779 n.9 (11th Cir. 1993).  Specific objections to the Magistrate Judge's
evidentiary findings are addressed in Section II, *infra*.

[27.2] ("Def. SOF") ¶ 1; Pl. Resp. [31.1] ¶ 1).  On July 25, 2005, Plaintiff was promoted from Supervisor to the position now known as Apprentice.  (See Def. SOF. ¶¶ 4, 5; Pl. Resp. ¶¶ 4, 5).  Chipotle's employee hierarchy is, in ascending order of responsibility, as follows:  Crew, Kitchen Manager, Service Manager, Apprentice, General Manager, Restaurateur.  (Def. SOF. ¶ 5; Pl. Resp. ¶ 5). Chipotle restaurants that averaged more than $4500 in sales each day were typically staffed by a General Manager and an Apprentice, while restaurants that averaged less than $4500 were not required to have both a General Manager and an Apprentice and so had either a General Manager working without an Apprentice or an Apprentice working without a General Manager.  (Def. SOF. ¶¶ 10, 11; Deposition of Leslie Ratelle, [27.6] ("Ratelle Dep."), at 18; Deposition of Devin DeHaven, [27.4] ("DeHaven Dep."), at 51, 140-42; Deposition of Shalett L. Doxie, [27.5] ("Doxie Dep."), at 212-13)).  Above the position of Restaurateur, Chipotle employs Apprentice Team Leaders, Team Leaders and Area Managers, who are responsible for the operations of multiple restaurants within a geographic region. (Def. SOF ¶ 14; Pl. Resp. ¶ 14).  These persons, in turn, report to a Team Director. (Id.).

In June 2008, Plaintiff was transferred to Chipotle's Mall of Georgia restaurant as an Apprentice.  (Def. SOF ¶ 21; Doxie Dep. at 63-64).  At the time Plaintiff was transferred, Nipul Patel was the Restaurateur of the Mall of Georgia restaurant and there was no General Manager.  (See Def. SOF ¶¶ 22, 28; Pl. Resp. ¶¶ 22, 28).  Patel was responsible only for the Mall of Georgia and Plaintiff worked directly with Patel for approximately one year.  (Def. SOF ¶ 23; Pl. Resp. ¶ 23).  During that time, Patel tried to develop Plaintiff into a General Manager.  (Id.)  In early 2010, Patel became responsible for multiple Chipotle Restaurants, leaving Plaintiff as an Apprentice acting as a General Manager.  (See Def. SOF ¶¶ 27, 28; Pl. Resp. ¶¶ 27, 28; Plaintiff's Statement of Undisputed Facts [31.2] ("Pl. SOF") ¶ 2; Def. Resp. [32.1] ¶ 2).

In 2010, Leslie Ratelle, a white female, was a Team Director responsible for approximately 50 restaurants, including the Mall of Georgia restaurant, and one of Plaintiff's supervisors.  (Def. SOF. ¶¶ 15, 18; Pl. Resp. ¶¶ 15, 18; Pl. SOF ¶ 3; Def. Resp. ¶ 3).  From January 2010 until September 2010, Melanie Burrows, a white female, was the Area Manager responsible for multiple restaurants and was Plaintiff's direct supervisor.  (Pl. SOF ¶ 4; Def. Resp. ¶ 4; Def. SOF ¶ 29; Pl. Resp. ¶ 29).

In February 2010, Plaintiff reported to Human Resources that one of her subordinates, in Spanish, called a customer a "Fucking N-----."  (Def. SOF ¶ 101; Pl. Resp. ¶ 101).  After discussions with HR and with HR's approval, Plaintiff terminated the employee for her racist comment.  (Id.)  Plaintiff also reported to HR other racial tensions between Plaintiff and her subordinates, who were Hispanic.  (Def. SOF ¶ 102; Pl. Resp. ¶ 102).  Plaintiff reported these issues to Ratelle, who told Plaintiff to hold a meeting with her crew to discuss issues between them.  (Id.)  Plaintiff held this meeting and afterwards there still was tension between her and her crew members.  (Id.; Def. SOF ¶ 103; Pl. Resp. ¶ 103).  Plaintiff spoke to Patel about the continued tensions.  Patel told Plaintiff not to report them to Human Resources because it would make Ratelle look bad.  (Def. SOF ¶ 104; Pl. Resp. ¶ 104).

On March 2, 2010, it was noted in Plaintiff's Development Journal that Plaintiff needed to check daily cash receipts ("DCRs") more thoroughly and that Plaintiff needed to have a better eye for detail with food quality.  (Def. SOF ¶ 38; [27.17]).  On May 20, 2010, another entry in Plaintiff's Development Journal showed that Plaintiff set goals for herself to make improvements.  ([27.19] at 1).  On June 7, 2010, Burrows submitted a note in Plaintiff's Development Journal as a

4

follow-up to the May 20 entry.  (Def. SOF ¶ 44; [27.19] at 1-2).  Burrows

commented that Plaintiff "show[ed] inconsistency in running a great operation and

not meeting expectation" and that Burrows wanted Plaintiff "to improve

on . . . follow through on getting . . . day to day operation duties complete[d] and

on time."  ([27.19] at 1).  Burrows provided examples such as opening the store by

10:45 am, taking the deposits to the bank before 10:00 am, having weekly cash

audits and posting her schedule no later than Thursday.  (Id.).

Chipotle utilizes audits to assess the operations and cash handling of each

restaurant.  Audits are conducted weekly by General Managers; monthly by a

Restaurateur, Area Manager, Apprentice Team Leader, or Team Leader; and, once

a year, a corporate audit is performed by one or more members of Chipotle's

corporate Safety Security and Risk Team.  (Def. SOF ¶ 41; Pl. Resp. ¶ 41).  In

these audits, the cash handling score is represented as a number and the operations

grade is reflected as a letter grade.  (Def. SOF ¶ 42; Pl. Resp. ¶ 42).  Most Chipotle

restaurants have only one or two cash handling violations per quarter.  (Id.).

On May 30, 2010, an audit was performed on the Mall of Georgia restaurant

in which the restaurant received a "3," meaning that there were three cash handling

violations, and an Operation Grade of "A."  (Def. SOF ¶ 43; Pl. Resp. ¶ 43; Pl.

SOF ¶ 66).  On June 7, 2010, the Mall of Georgia restaurant received an audit score of "2" and a grade of "A."  (Def. SOF ¶ 44; Pl. Resp. ¶ 44; Pl. SOF ¶ 67).  On July 24, 2010, the Mall of Georgia restaurant received an audit score of "0" and a grade of "A."  (Pl. SOF ¶ 68; [31.21]).  On August 28, 2010, the Mall of Georgia restaurant received an audit score of "2" and a "B" grade for operations.  (Def. SOF ¶ 61; Pl. Resp. ¶ 61; Pl. SOF ¶ 69).  Plaintiff also did not receive a bonus in 2010.  (Def. SOF ¶ 49; Doxie Dep. at 181).[2]

In late June 2010, Burrows communicated to Ratelle and Devin DeHaven about Plaintiff's performance issues and expressed a desire to terminate Plaintiff. (Def. SOF ¶¶ 46,9 63; Pl. Resp. ¶ 63; Ratelle Dep. at 162; DeHaven Dep. at 61-62, 252-53; Ratelle Decl. ¶ 12; [27.24]).

In September 2010, Burrows was terminated for failing to spend the necessary amount of time in the stores developing and mentoring the management team, including Plaintiff.  (Def. SOF ¶ 62; Pl. Resp. ¶ 62; Pl. SOF ¶ 5).  Devin DeHaven, a white male and Restaurateur, was assigned to mentor and supervise Plaintiff and was responsible for the Mall of Georgia, Johns Creek, East Cobb, and

---

[2]     Most stores may have one or two cash handling issues per quarter, and management-level employees receive a bonus based on good performance.

Windward locations.  (Def. SOF ¶ 63; Pl. Resp. ¶ 63; Pl. SOF. ¶ 7; Def. Resp. ¶ 7).

When DeHaven took over, Ratelle discussed with him Plaintiff's leadership issues,

including Plaintiff's not coming into work, failure to schedule herself the requisite

number of hours, failure to hold herself accountable and her need to hold both her

crew and herself to high standards.  (Def. SOF ¶ 65; Pl. Resp. ¶ 65).

On October 4, 2010, a corporate audit was performed on the Mall of Georgia

restaurant (the "October 4th audit").  (Def. SOF ¶ 66; Pl. Resp. ¶ 66).  Plaintiff

received an "F" grade on operations and a cash handling score of "11."  (Def. SOF

¶ 67; Pl. Resp. ¶ 67).  Corporate audits also were performed on the Johns Creek

and Windward restaurants in October 2010, for which the Johns Creek restaurant

received a "D" grade for operations and a cash handling score of "3," and the

Windward restaurant received an "F" grade for operations and a cash handling

score of "7."  (Pl. SOF ¶¶ 72, 73; [31.23, 31.24]).  At the time of these corporate

audits, the General Manager at the Johns Creek restaurant was Aldo Pereira, a

Hispanic male, and the General Manager at the Windward restaurant was Martin

Pereira, also a Hispanic male.  (Pl. SOF ¶¶ 74-75; DeHaven Dep. at 162, 168-69).

Both General Managers previously had been promoted to these positions by

DeHaven.  (Pl. SOF ¶¶ 23-24; DeHaven Dep. at 47-48).

After the October 4 audit, Regional Director Bobby Shaw (Ratelle's supervisor) sent an email stating "I think we can move forward with Shallet's termination anytime.  Are you feeling that way too?"  (Def. SOF ¶ 73; Pl. Resp. ¶ 73; [27.36]).  DeHaven did not discipline Plaintiff or any other manager for this audit.  (Def. SOF ¶ 74; Pl. Resp. ¶ 74; Pl. SOF ¶ 78; DeHaven Dep. at 169-70).

On October 24, 2010, DeHaven sent an email to the managers of his restaurants, including Plaintiff, informing them that he would be doing monthly cash audits of the Mall of Georgia, Windward and East Cobb restaurants that week in anticipation of the return of one of the corporate auditors.  (Def. SOF. ¶ 79; [27.41]).  On October 26, 2010, LeAnn West, a white female and another Restaurateur, along with DeHaven, performed what was purported to be a cash handling audit of the Mall of Georgia Restaurant (the "October 26th audit").  (See Def. SOF ¶¶ 78, 80, 81; DeHaven Dep. at 85; Deposition of LeAnn West [27.20] ("West Dep.") at 118).  In an email to DeHaven from West dated October 30, 2010, West reported findings of fourteen violations in a twenty-six day period.  (Def. SOF. ¶ 80; [27.42]).

On October 25, 2010, the day before the October 26th audit by West and DeHaven, Ratelle and DeHaven transferred and promoted Javier Correa, a

Hispanic male, to the General Manager position at the Mall of Georgia restaurant, effective October 29, 2010.  (Pl. SOF ¶ 13; Def. Resp. ¶ 13).  On October 26, 2010, the day of the examination, Plaintiff's termination paperwork was processed with an effective date of October 28, 2010.  (Pl. SOF ¶ 12; Def. Resp. ¶ 12; [31.9]).  On October 28, 2010, DeHaven notified Plaintiff that she was terminated.  (Def. SOF ¶ 83; Pl. Resp. ¶ 83).  At the meeting in which Plaintiff was terminated, DeHaven stated that Burrows had failed to support Plaintiff and that "as a woman, she should have stepped up" to mentor Plaintiff.  (Def. SOF ¶ 86; Pl. Resp. ¶ 86).[3]

On February 3, 2011, Plaintiff timely filed a charge of discrimination [1.1] alleging race and sex discrimination with the Equal Employment Opportunity Commission ("EEOC").  On March 19, 2013, the EEOC issued a finding of reasonable cause [1.2] as to the alleged race discrimination and determined that there was insufficient evidence to support the allegation of sex discrimination. Plaintiff received a right-to-sue letter on May 12, 2013. (See Compl. [1] ¶ 67).

On August 7, 2013, Plaintiff initiated this action, alleging race and sex discrimination based on her termination from Chipotle.  (Def. SOF ¶ 108; Pl. Resp.

---

[3]     DeHaven also questioned Plaintiff about the performance of a black female Service Manager.  (See Def. SOF. ¶ 87; Pl. Resp. ¶ 87).

¶ 108).  Following discovery, Chipotle filed its motion for summary judgment.  On August 3, 2015, the Magistrate Judge issued his R&R, recommending that Chipotle's summary judgment motion be granted.  The Magistrate Judge recommended granting summary judgment on Plaintiff's claims based on Plaintiff's failure to provide sufficient evidence to support her argument that Chipotle's legitimate, non-discriminatory reasons for terminating her were a pretext for discrimination.  (See R&R at 52-61).

On August 18, 2015, Plaintiff filed her Objections to the R&R [35]. Plaintiff argues that the Magistrate Judge erred (1) in finding that Plaintiff had a documented poor performance record (Obj. at 2); (2) in incorrectly concluding that the Court does not engage in credibility determinations at the summary judgment stage (id.); (3) in incorrectly applying Eleventh Circuit precedent that discrimination can be inferred from an employer's failure to follow its own disciplinary process and procedures (id. at 3); (4) regarding the burden of identifying the termination decisionmaker (id. at 4); (5) in his findings on the date the decision to terminate Plaintiff was made (id.); (6) regarding whether Chipotle's termination reasons were legitimate (id.); and (7) regarding the sufficiency of evidence showing pretext (id.).

10

**II.    DISCUSSION**

A.    Legal Standards

1.    *Standard of Review for R&Rs*

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam).  A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  If no party has objected to the report and recommendation, a court conducts only a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).

2.    *Summary Judgment Standard*

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.

11

Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the

moving party has met this burden, the nonmoving party must demonstrate that

summary judgment is inappropriate by designating specific facts showing a

genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282

(11th Cir. 1999).  The nonmoving party "need not present evidence in a form

necessary for admission at trial; however, he may not merely rest on his

pleadings." Id.

 "At the summary judgment stage, facts must be viewed in the light most

favorable to the nonmoving party only if there is a 'genuine' dispute as to those

facts." Scott v. Harris, 550 U.S. 372, 380 (2007).  Where the record tells two

different stories, one blatantly contradicted by the evidence, the Court is not

required to adopt that version of the facts when ruling on summary judgment.  Id.

"[C]redibility determinations, the weighing of evidence, and the drawing of

inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at

1282.  "If the record presents factual issues, the court must not decide them; it must

deny the motion and proceed to trial." Herzog, 193 F.3d at 1246.  The party

opposing summary judgment "'must do more than simply show that there is some

metaphysical doubt as to the material facts . . . .  Where the record taken as a whole

12

could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Scott, 550 U.S. at 380 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).  A party is entitled to summary judgment if "the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quotations omitted).

    B.    Analysis

        1.    *Legal Framework*

Plaintiff alleges that Chipotle terminated her employment based on her race and gender, in violation of Title VII and 42 U.S.C. § 1981.  Title VII makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Section 1981 "prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." Blow v. Virginia College, --- F. App'x ---, ---, 2015 WL 4503337, at *2 (11th Cir. July 24, 2015) (quoting Ferrill v. Parker Grp., Inc., 168 F.3d 468, 472

(11th Cir. 1999); see 42 U.S.C. § 1981.  Plaintiff's Section 1981 claim is subject to the same standards of proof and is analyzed under the same analytical framework as her Title VII claims.  See Bryant v. Jones, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009).

Claims of discrimination relying on circumstantial evidence are evaluated using the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Maddox-Jones v. Bd. of Regents of Univ. Sys. of Ga., 448 F. App'x 17, 19 (11th Cir. 2011) (per curiam).  Under the McDonnell Douglas evidentiary framework, a plaintiff establishes a prima facie case of disparate treatment by showing that (1) she is a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) her employer treated more favorably similarly situated employees outside the protected class.  Id. at 20.

The second step of the McDonnell Douglas analysis requires Chipotle to rebut Plaintiff's prima face case by producing a legitimate, nondiscriminatory reason for the alleged disparate treatment.  This burden is "exceedingly light."  Turnes v. AmSouth Bank, NA, 36 F.3d 1057, 1061 (11th Cir. 1994) (quotations omitted).  Where a prima facie case is rebutted, Plaintiff has the opportunity to

14

show that Chipotle's stated reasons are pretexts for discrimination.  Kragor
v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1308 (11th Cir. 2012).  Plaintiff must
show "such weaknesses, implausibilities, inconsistencies, or contradictions in the
employer's proffered legitimate reasons for its action that a reasonable factfinder
could find them unworthy of credence."  Combs v. Plantation Patterns, 106 F.3d
1519, 1528 (11th Cir. 1997) (quotations omitted).

Despite this burden-shifting framework, the "ultimate burden of persuading
the trier of fact that the defendant intentionally discriminated against the plaintiff
remains at all times with the plaintiff."  Wilson v. B/E Aerospace, Inc., 376 F.3d
1079, 1088 (11th Cir. 2004) (quotations omitted).

The Magistrate Judge concluded that Plaintiff has established a prima facie
case of discrimination.  (R&R at 28).  No party objects to this finding, and the
Court finds no plain error in it.  The Court turns to the second step of the
McDonnell Douglas analysis.

### 2.  *Legitimate, Non-Discriminatory Reason*

The second step of the McDonnell Douglas analysis requires Chipotle to
rebut Plaintiff's prima face case by producing a legitimate, nondiscriminatory
reason for the alleged disparate treatment.  The Magistrate Judge found that

15

Chipotle has met this burden.  (R&R at 39).  The Magistrate Judge based his opinion on the substantial evidence of Plaintiff's poor performance, including Plaintiff's failed October 26th audit, Development Journal entries reflecting that Plaintiff performed inconsistently and was not meeting expectations, documented cash handling issues, and an assessment that Plaintiff lacked effective leadership. (Id. at 34-39).

Plaintiff objects on a number of grounds.  First, Plaintiff argues that the Magistrate Judge erred in concluding that the Court "does not engage in credibility determinations at this stage, that is, the summary judgment stage."  (Obj. at 2). Plaintiff argues that she can avoid summary judgment "by doing exactly that— attacking the credibility of Chipotle's proffered reasons."  (Id. at 2-3 (citing cases)).  It appears Plaintiff believes the Magistrate barred her from the third stage of the McDonnell Douglas analysis, by which she is entitled to present evidence that Chipotle's reasons for terminating her are pretexts for discrimination.  Plaintiff misconstrues the Magistrate Judge's statement of the applicable legal standard. The Magistrate Judge found that the Court is not allowed to engage in credibility determinations in evaluating Chipotle's burden of production in the second phase of the McDonnell Douglas analysis.  (See R&R at 29, 35).  The Court agrees.  See

St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993) ("[T]he determination that a defendant has met its burden of production (and has thus rebutted any legal presumption of intentional discrimination) can involve no credibility assessment. For the burden-of-production determination necessarily precedes the credibility-assessment stage."). The Magistrate Judge applied the appropriate legal standard.

Plaintiff next argues that DeHaven did not state that he relied on the documents allegedly reflecting Plaintiff's poor performance in making his decision to terminate Plaintiff. (Obj. at 9). Plaintiff also argues that her performance reviews were unsigned, and "[i]n order to be effective under Chipotle policy, a performance review must be signed by the employee and manager." (Id.). She argues she was never placed on a performance improvement plan ("PIP"), as alleged by Chipotle. (Id. at 10). Plaintiff argues further that the Magistrate Judge's finding that Plaintiff had cash handling issues is erroneous because "other than the October 4, 2010 audit, every audit that Doxie received was great" and "Ratelle admits that Chipotle records show only a single bad cash handling audit." (Id. at 10-11).

The Court agrees with the Magistrate Judge that Plaintiff asks the Court to "ignore most of Defendant's evidence of poor performance" simply because

17

DeHaven allegedly did not discuss those performance issues with Plaintiff. (R&R at 34-35). "[J]ust because DeHaven did not discuss her performance issues with her does not mean that neither he nor any other supervisor in Defendant's employ perceived her performance shortcomings," and the record shows Plaintiff's performance shortcomings were known to a variety of management personnel. (R&R at 35).

The Magistrate Judge specifically addressed Plaintiff's arguments regarding unsigned performance reviews and the PIP she allegedly did not receive, noting that DeHaven testified that Burrows told him Plaintiff had a bad performance review and was placed on a PIP. (R&R at 59). There is no reason to believe DeHaven did not use this information in making his decision to terminate Plaintiff. Even assuming the truth of Plaintiff's assertion that she only had a single bad cash handling audit, Plaintiff fails to contend with the non-audit evidence of her ongoing poor cash handling. (See, e.g., Def. SOF ¶ 38 (Development Journal noted Plaintiff needed to check cash receipts more thoroughly); [27.17] (same)). Chipotle has presented sufficient evidence to carry its burden to show a legitimate, non-discriminatory reason for terminating Plaintiff.

Plaintiff next argues that the Magistrate Judge "erroneously concludes that Doxie bears the burden to identify Chipotle's decisionmakers." (Obj. at 4). Plaintiff contends that DeHaven and Ratelle both should have been considered as decisionmakers, not just DeHaven. (See id. at 5). The crux of Plaintiff's argument is that DeHaven and Ratelle made the decision to terminate Plaintiff before the October 26th audit, and DeHaven therefore could not have relied on the October 26th audit in deciding to terminate Plaintiff. The Court agrees with the Magistrate Judge that the Court is not required to decide whether DeHaven was the sole final decisionmaker or whether he acted together with Ratelle. (R&R at 25). Plaintiff failed to show that DeHaven—who, it is undisputed, was one of the final decisionmakers—made the decision to terminate Plaintiff before the October 26th audit. At most, Plaintiff only presents evidence that *Ratelle* had made a decision to terminate Plaintiff on or before October 25. (R&R at 25-26; Ratelle Dep. at 128:12-17 ("Q: So you would agree with me, prior to October 25, *you* had made a decision to terminate Ms. Doxie . . . A: Yes." (emphasis added)). In any event, the October 26th audit was only one piece of evidence establishing Plaintiff's poor

performance record, and, even without it, Chipotle carried its burden to show a

legitimate, non-discriminatory reason for terminating Plaintiff.[4]

Plaintiff's arguments ignore the substantial evidence establishing her poor

performance. This evidence carries Chipotle's "exceedingly light" burden to show

---

[4]     Plaintiff's argument that the October 26th audit should not have been
credited by the Magistrate Judge because it was not an official audit under Chipotle
procedure, (Obj. at 12-13), also fails. The Magistrate Judge saw "no reason—and
Plaintiff offers no support—why [the Court] should ignore West and DeHaven's
observations and findings, or why an employer could not rely upon such
examination to make an employment decision." (R&R at 36). The Court agrees.
Even without the October 26th audit, Plaintiff was required to contend with the
array of other evidence establishing her poor performance.

Plaintiff's argument that the Magistrate Judge erred in relying on the
Development Journals in finding that Plaintiff had documented performance issues
fails for similar reasons. Plaintiff argues that Development Journals are not used
for disciplinary purposes, and that DeHaven and Ratelle did not submit any entries
in Plaintiff's Development Journal. (Obj. at 14). There is, however, no reason
why an employer could not rely on Development Journals to make an employment
decision regarding an employee's ongoing poor performance. Plaintiff ignores that
the Development Entries are but "one instance out of many that demonstrated a
documented history of poor performance." (R&R at 35). That DeHaven and
Ratelle did not submit entries does not mean they were unaware of the problems
reflected in the Journal. To the contrary, the record shows that, in late June 2010,
Burrows communicated to DeHaven and Ratelle about Plaintiff's performance
issues and expressed a desire to terminate her because of these deficiencies. (Def.
SOF ¶¶ 46,9 63; Pl. Resp. ¶ 63; Ratelle Dep. at 162; DeHaven Dep. at 61-62,
252-53; Ratelle Decl. ¶ 12; [27.24]).

a legitimate, non-discriminatory reason for Plaintiff's termination.[5]  Turnes, 36

F.3d at 1061.

        3.    *Pretext*

     Where a prima facie case is rebutted, Plaintiff has the opportunity to show

that Chipotle's stated reasons are pretexts for discrimination.  Kragor, 702 F.3d at

1308.  Plaintiff argues that a genuine issue of fact exists regarding pretext because

Chipotle made false statements to the EEOC regarding her termination.  (Pl.'s

Resp. [31] at 14-17).  Plaintiff also argues that, after the EEOC issued its

determination finding reasonable cause on race discrimination, Chipotle shifted its

---

[5]     The Court also does not credit Plaintiff's argument that the October 4th audit
should not be taken into account because DeHaven and Ratelle did not take any
disciplinary action against Plaintiff based on the audit.  (Obj. 11-12).  There is no
reason Chipotle could not rely on the October 4th audit to make an employment
decision, regardless of whether Chipotle disciplined Plaintiff immediately after it.

     Plaintiff's argument that the October 4th audit is "relied upon to terminate
Doxie, but not to terminate nor discipline the two Hispanic males" who were also
subjects of the audit, also fails as a basis for concluding that Chipotle's stated
reasons for Plaintiff's termination were pretextual.  Plaintiff did not present
evidence that the two Hispanic males had documented histories of poor
performance, like Plaintiff did, and she ignores that the October 4th audit was "one
instance out of many that demonstrated a documented history of poor
performance."  (R&R at 35).  The Court agrees with the Magistrate that "Plaintiff
has not demonstrated that [DeHaven] chose [Hispanic males] over qualified
non-Hispanic females," and has not shown that "DeHaven had a discriminatory
animus based on Plaintiff's race or sex."  (R&R at 60).

reasons for termination and now asserts that Plaintiff was terminated based on a 2010 performance review and the October 26th audit.  (Id. at 16).

The Magistrate Judge found that, even "if [Chipotle] exaggerated the instances when Plaintiff was counseled by its management, these false statements do not rebut the documented history of poor performance relied upon in terminating Plaintiff."  (R&R at 53).  The Magistrate noted that Plaintiff has not demonstrated how the allegedly false statements show that the real reason for terminating Plaintiff was unlawful discrimination.  (Id.).

Plaintiff's objections recycle the arguments she made in response to summary judgment.  She alleges the following misrepresentations to the EEOC: (1) Chipotle represented that DeHaven, West, and Ratelle counseled Plaintiff over the years, yet these individuals either admit they never counseled her or there is a lack of evidence to show they counseled her; (2) Chipotle represented that DeHaven pointed out basic tasks to Plaintiff which she failed to complete, but DeHaven cannot remember a specific instance of her failure; (3) Chipotle represented that Plaintiff's performance evaluation ranking of "2" was low, when in fact a "2" indicates exceeding expectations; (4) Chipotle represented that

Plaintiff had cash handling issues, but DeHaven cannot identify a single conversation with Plaintiff regarding cash handling issues.  (Obj. at 16-19).

The Court agrees with the Magistrate that Chipotle "has not wavered on its position that Plaintiff had cash handling issues, and although DeHaven cannot identify a conversation he had with Plaintiff about them, such failure does not make the allegations about poor cash handling . . . false."  (R&R at 54).  As discussed, the Development Journal, the corporate audits, and other evidence demonstrate Plaintiff had cash handling violations.

The Court also agrees with the Magistrate Judge that the allegedly false statements, standing alone, do not create a genuine issue of fact whether Chipotle's reason for terminating Plaintiff was not her performance but rather unlawful discrimination.  Plaintiff correctly states that proof that an employer's "explanation is unworthy of credence" can allow the jury to reasonably infer that an employer is "dissembling to cover up a discriminatory purpose," and that dishonesty can be "affirmative evidence of guilt."  (Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).  However, the Court is required to look to "the probative value of the proof that the employer's explanation is false, and any . . . evidence that supports the employer's case . . . ."  Id. at 148.  Assuming the truth of

23

Plaintiff's allegations of Chipotle's misrepresentations to the EEOC, Plaintiff has not established that there are "such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs, 106 F.3d at 1528 (quotations omitted).  The Court finds Chipotle's alleged misrepresentations are, at most, exaggerations in support of its legitimate, non-discriminatory reasons. Chipotle's alleged misrepresentations do not contradict the evidence of Chipotle's proffered reasons for terminating Plaintiff, and they do not lead one to suspect that those reasons are false.  In light of the ample documented evidence of Plaintiff's poor performance, Plaintiff fails to show evidence to create an issue of fact regarding Chipotle's stated reasons for termination.

Plaintiff next argues that, after the EEOC issued its determination finding reasonable cause on race discrimination, Chipotle shifted its reasons for termination and now asserts that Plaintiff was terminated based on a 2010 performance review and the October 26th audit—assertions never made to the EEOC.  (Obj. at 16).  Plaintiff correctly notes that an employer's shifting reasons for termination can create an inference of discrimination sufficient to survive summary judgment.  (Id. at 16); see Hurlbert v. St. Mary's Health Care Sys., Inc.,

439 F.3d 1286, 1298 (11th Cir. 2006).  The Court, however, agrees with the Magistrate that Chipotle's "reason for terminating Plaintiff has always been based on Plaintiff's poor work performance."  (R&R at 54).  The fact that Chipotle provided *additional* specific instances to demonstrate Plaintiff's poor work performance is not evidence of inconsistent reasons, and does not evidence that Chipotle "shifted" to a different reason for Plaintiff's termination.  See Tidwell v. Carter Prods., 135 F.3d 1422, 1428 (11th Cir. 1998).

Plaintiff next argues that an employer's failure to follow its own progressive discipline policy gives rise to an inference of discrimination.  (Obj. at 19).  The Magistrate found that Plaintiff has not provided any evidence that Chipotle's progressive discipline policy—assuming there even was one—was mandatory. (R&R at 55-56).  Chipotle's HR specialist testified the progressive discipline policy was not an established rule but a "best practice" that was not always followed.  (Deposition of Ernnia Dennis [27.13] ("Dennis Dep.") at 14-18, 80, 114-16, 125-26, 129-33, 134-37).  Plaintiff failed to identify any documented Chipotle policy that requires its managers to follow the progressive discipline policy.  (R&R at 55-56).

Plaintiff concedes that the Court's precedent and Eleventh Circuit precedent holds that failure to follow discretionary policies and procedures does not show pretext. She argues, rather, that *published* Eleventh Circuit opinions do not distinguish between mandatory and discretionary policy in evaluating whether a reason for an adverse employment action is a pretext. (Obj. at 19-20). The opinions upon which Plaintiff relies do not apply here. Plaintiff points to Morrison v. Booth, 763 F.2d 1366, 1373 (11th Cir. 1985), Carter v. Three Springs Residential Treatment, 132 F.3d 635 (11th Cir. 1998), and Jean v. Nelson, 711 F.2d 1455 (11th Cir. 1983) to support her argument. (Obj. at 3). Morrison and Carter, however, analyzed the breaking or bending of *established* rules or policies. See Carter, 132 F.3d at 644; Morrison, 736 F.2d at 1374. The Eleventh Circuit in Jean found "numerous departures from the normal [immigration] exclusion procedure" and a lack of evidence "that any group other than the Haitians was subjected to these questionable practices." Id. at 1492. That is simply not the case here.[6]

_____

[6]    That Jean involved a fifth amendment equal protection claim against the government and was decided under a different legal standard further shows it does not apply here. 711 F.2d at 1490-93.

The progressive discipline policy here was a "best practice" that was not always applied.  Binding authority holds that "[i]f management has discretion as to whether to follow the discipline policy, then a failure to follow the policy does not show pretext."[7]  Ritchie v. Indus. Steel, Inc., 426 F. App'x 867, 873 (11th Cir. 2011) (citing Morris v. City of Chillicothe, 512 F.3d 1013, 1020 (8th Cir. 2008); see also Fane v. Locke Reynolds, LLP, 480 F.3d 534, 541 (7th Cir. 2007); Chavez v. Credit Nation Auto Sales, 49 F. Supp. 3d 1163, 1176 (N.D. Ga. 2014) (Duffey, J.) (rejecting pretext argument because employer reserved the right to use progressive discipline at its discretion).  That is the case here. [8]

---

[7]  Even if Plaintiff could use evidence of failure to follow a discretionary policy to argue pretext—which binding precedent holds she cannot—Chipotle's failure to adhere to the progressive discipline policy does not create a material issue of fact as to whether Chipotle terminated Plaintiff for discriminatory reasons. Perhaps if Plaintiff could show that Chipotle followed its progressive discipline policy in all circumstances except in terminating Plaintiff, Plaintiff may have a plausible pretext argument.  That is not the case here.  Chipotle's HR specialist testified the policy was a "best practice" that was not always followed.  (Dennis Dep. at 14-18, 80, 114-16, 125-26, 129-33, 134-37).  Plaintiff's argument also fails for practical reasons.  The logical conclusion of her argument is that any Chipotle employee can survive summary judgment if the employee was terminated without progressive discipline, regardless of the severity of the employee's misbehavior. This position is untenable.

[8]  Plaintiff haphazardly argues that "video that has not been produced, the hiring practices by DeHaven, and the issues between black and Hispanic employees at the Mall of Georgia location provides additional evidence that

Plaintiff has failed to show "such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs, 106 F.3d at 1528 (quotations omitted).  Accordingly, Plaintiff has failed to show that Chipotle's legitimate, non-discriminatory reasons are pretexts for discrimination, and the Court is required to grant Chipotle's motion for summary judgment.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Alan J. Baverman's Final Report and Recommendation [33] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Chipotle's Motion for Summary Judgment [27] is **GRANTED**.

---

Chipotle was seeking to replace Doxie with a Hispanic employee."  This conclusory statement is not a valid objection to the R&R and the Court will not consider it.  Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988) ("Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to.  Frivolous, conclusive, or general objections need not be considered by the district court.").  The Magistrate Judge concluded that the issues listed by Plaintiff do not demonstrate discriminatory animus, (R&R at 57-61), and the Court finds no plain error in these findings.

**SO ORDERED** this 29th day of September 2015.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE